DeAnne Casperson, Esq. (ISB No. 6698)
dcasperson@holdenlegal.com
Amanda E. Ulrich (ISB No. 7986)
aulrich@holdenlegal.com
HOLDEN KIDWELL HAHN & CRAPO, P.L.L.C.
P.O. Box 50130
1000 Riverwalk Drive, Suite 200
Idaho Falls, ID 83405
Telephone: (208) 523-0620
Facsimile: (208) 523-9518

Laurie Baird Gaffney, Esq. (ISB. 5981)
laurie@gaffneylaw.net
BANKS GAFFNEY & MCNALLY, PLLC
330 Shoup Avenue, Suite 201
Idaho Falls, Idaho 83402
Telephone: (208) 524-6655
Facsimile: (208) 524-6301

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MIRIAM TORRES, fka MIRIAM SEVY,<br><br>      Plaintiff,<br>v.<br><br>SUGAR-SALEM SCHOOL DISTRICT # 322, a political subdivision of the State of Idaho, and BRYCE OWEN, individually and in his capacity as a former employee of Sugar-Salem School District,<br><br>      Defendants. | Case No.<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL**<br><br>Filing Fee: $400.00 |

Plaintiff, Miriam Torres, formerly known as Miriam Sevy, by and through her counsel of record, Holden, Kidwell, Hahn & Crapo, P.L.L.C., and Banks, Gaffney & McNally, PLLC, as a cause of action against Defendants Sugar-Salem School District # 322, a political subdivision of the

State of Idaho, and Bryce Owen, individually and in his capacity as a former employee of the Sugar-Salem School District, alleges and complains as follows:

## JURISDICTION AND VENUE

1.      This action is brought under Title IX of the Education Amendments Act of 1972, 20 U.S.C. § 1681, 42 U.S.C. § 1983, and the common law and statutory of the State of Idaho.

2.      Jurisdiction in this matter is invoked pursuant to 28 U.S.C. §§ 1331, 1343(4) and 1367.

3.      This action properly lies in the District of Idaho, Eastern Division, pursuant to 28 U.S.C. § 1391(b) because the acts or omissions which give rise to Plaintiff's claims occurred in this judicial district.

## PARTIES

4.      Plaintiff Miriam Torres, formerly known as Miriam Sevy ("Plaintiff") is now, and was at all times material to this Complaint, a resident of Madison County, Idaho.  Further, at all times material to this Complaint, Plaintiff was a student at Sugar-Salem High School, which is administered by Defendant, Sugar-Salem School District.

5.      Defendant Sugar-Salem School District # 322 ("Sugar-Salem") is a political subdivision of the State of Idaho, located in Madison County, Idaho.  At all times material to this Complaint, Sugar-Salem was operating an educational program or activity receiving federal financial assistance, bringing it under the requirements of Title IX of the Education Amendments Act, 20 U.S.C. § 1681.

6.      Defendant Bryce Owen ("Owen") is now, and at all pertinent times hereto, was a resident of Madison County, Idaho.  Further, at all times material to this Complaint, Owen was a school counselor at Sugar-Salem High School.

## FACTS COMMON TO ALL COUNTS

7.      Plaintiff met Owen in September 2010 at the beginning of her sophomore year at Sugar-Salem High School.

8.      In late September 2010, Plaintiff was approached by Owen at the school, when he asked her if she wanted to participate in counseling with him.  Plaintiff was uncomfortable with the idea of counseling, but did not believe she could refuse due to Owen's position of authority at the school as a counselor.

9.      In October 2010, Owen pulled Plaintiff out of class for their first counseling session.  Owen situated his chair next to hers in such a way that their knees almost touched, making Plaintiff uncomfortable.

10.      During their first session, Owen asked Plaintiff about her parents' divorce and her extracurricular interests.  He met with her for approximately 90 minutes.  At the end of the session, Owen gave Plaintiff his personal cell phone number and told her to call him if she ever needed to talk.

11.      In the following weeks during the first trimester of 2010, Owen regularly and persistently pulled Plaintiff out of class for counseling in his office.  Many of those counseling sessions lasted two (2) hours.

12.      In approximately December 2010, Plaintiff disclosed to Owen that she had a sexual relationship with a 32 year old man the summer before she entered eighth grade.  Owen insisted that Plaintiff describe in graphic detail the sexual acts engaged in between her and the 32 year old man, including how the sexual acts felt and whether it "hurt."

13.      In their following sessions, Owen continued to initiate discussions with Plaintiff about sex with the 32-year old man.  Owen, who is subject to a mandatory requirement as a school

counselor that he report sexual abuse of a minor to the proper authorities, never reported Plaintiff's reports of sexual abuse. Further, Owens never told or explained to Plaintiff that the sexual encounter with the 32-year old man was abuse and that she could not, as a minor, give consent.

14. Owen continued to have frequent and regular counseling sessions with Plaintiff throughout the remainder of the school year, where the primary topic of conversation was her sexual history including her relationship with her high school boyfriend.

15. In approximately May 2011, Plaintiff disclosed to Owen that she was having a sexual relationship with her high school boyfriend. Owen wanted to know the details of her sexual experience and asked her to tell him in great detail what she felt and whether the sex hurt her.

16. In May 2011, Owen disclosed to Plaintiff's boyfriend's mother that her son and Plaintiff were having a sexual relationship. After Owen told Plaintiff's boyfriend's mother about the sexual relationship Plaintiff had with her boyfriend, the boyfriend's mother forbid her son from seeing Plaintiff.

17. When the school year began in September 2011, Owen initiated counseling with Plaintiff's former boyfriend. He also reinitiated counseling with Plaintiff and pulled her out of class an average of twice per week for multiple hours at a time.

18. In approximately January 2012, Owen informed Plaintiff that he was the new director of the theater at the school, and invited Plaintiff to audition for a part in the school play. Plaintiff told Owen she did not want to participate in the play, but Owen insisted that she at least help with hair and make up.

19.   In approximately February 2012, after rehearsal at the school, Plaintiff was crying in the hallway at school because she missed her boyfriend.  Owen saw Plaintiff crying in the hallway, approached Plaintiff and gave Plaintiff a hug.

20.   At their next counseling session, after the hug, Owen disclosed to Plaintiff that he had marital problems.  He also told Plaintiff he had had sex with a client while living in Boise, Idaho, and had sex with another client in Rexburg, Idaho.

21.   In April 2012, it was discovered by the Madison County Sheriff's Office and Sugar-Salem officials, including the principal of Sugar-Salem High School, that Owen had failed to report sexual abuse of a minor which had been reported to him by the minor.  Instead of reporting the abuse as required by law, Owen had the perpetrator write a letter of apology to the victim and gave the victim the letter.

22.   Sugar-Salem did not discipline Owen for his failure to report.  Instead, Sugar-Salem continued to employ Owen as a counselor at Sugar-Salem High School.

23.   As a result of Owen's failure to report the incident in April 2012, Sugar-Salem was aware that Owen did not comply with reporting requirements applicable to counselors, and was on notice that Owen was not properly performing his legal duties as a counselor.  Consequently, Sugar-Salem was subsequently under a duty to provide greater supervision over Owen's activities as a school counselor.

24.   In May 2012, Owen told Plaintiff he was directing a school play during the summer, and asked her to audition.  Plaintiff was given a part in the play and rehearsals were held several times a week at the school, for up to three hours per rehearsal.

25.     During rehearsals that summer, Owen was verbally complimentary to Plaintiff about her looks in front of other students. He was physically affectionate with Plaintiff outside of the presence of other students, including hugging and touching.

26.     Plaintiff, at that point sixteen (16) years old, began to rely upon Owen as a friend, confidant and protector.  On a Sunday in August 2012, Plaintiff texted to Owen, "I don't know why I'm telling you this, but I think I'm attracted to you."

27.     Immediately after Plaintiff sent the text message, Owen called her from his cell phone. Owen told her that he did not want to put anything in a text message, but he wanted to tell her that he "liked" her and found her attractive, too.

28.     The following Monday, after play rehearsal, Owen took Plaintiff into his office. He informed her that now was not a good time to have sex.  Plaintiff was frightened and confused because the thought of having sex with Owen had never crossed her mind and she did not want to have sex with Owen.

29.     Plaintiff was confused about her feelings for Defendant and performed an internet search on why clients become attracted to their counselors. Plaintiff informed Owen that she believed her feelings for him were due to "transference" and probably not real.  Owen responded, "You're probably right.  I don't know why I didn't think of that."

30.     In August 2012, Owen texted Plaintiff that he was attracted to her.  Owen told Plaintiff he could get into trouble for telling her he liked her, leading her to believe he genuinely cared for her, but did not want his wife to know.  In late August 2012, Plaintiff was in the costume shed at school when Owen came into the shed, turned off the lights, and shut the door behind him.  Owen grabbed Plaintiff and held her arms down at her sides.  Owen said, "Are you sure

you want to do this?" Plaintiff was afraid, and pushed Owen away.  She crouched beneath a clothes rack with her knees pressed to her chest until Owen left the shed.

31.    Owen continued to pull Plaintiff out of class for counseling sessions, encouraging Plaintiff to trust him and building a close relationship with her.  In September 2016, Owen informed Plaintiff in one of their counseling sessions that he could not have sex with her until she was 18, but did not explain why.  Plaintiff's eighteenth (18th) birthday was October 6, 2013.

32.    Owen continued his counseling sessions with Plaintiff, primarily talking to her about sex.

33.    On or around October 13, 2013, after school, Plaintiff was working alone in the sound booth at school.  Owen found her there and closed the door.  Owen pulled down Plaintiff's pants and proceeded to have sex with Plaintiff on the concrete floor of the sound booth.

34.    From October 13, 2013 until the end of Plaintiff's senior year in May 2014, Owen pulled Plaintiff out of class at least twice a week to have sex with her at school.  He had sex with her in the sound booth, auditorium, dressing rooms, costume shed, parking lot and his private office.  Plaintiff believed her relationship with Owen was normal and that he cared for her.

35.    Numerous teachers, administrators, and the school resource officer, whose office was directly across from Owen's office, saw Owen with Plaintiff on numerous occasions.

36.    Owen repeatedly told Plaintiff he would never tell anyone about their relationship and she should not either. Owen told Plaintiff he loved her and that he was going to leave his wife for Plaintiff.

37.    For the remainder of Plaintiff's senior year, she became withdrawn, depressed, and suicidal due to her relationship with Owen.  Plaintiff began having panic attacks.  She expressed her suicidal ideations to Owen and he responded that he sometimes feels suicidal too.

38. After Plaintiff's graduation from high school, she went to Utah for the summer. She and Owen saw each other once while she was in Utah in or about June, 2014. Owen had sex with her at a hotel. After this encounter, Plaintiff broke off the relationship with Owen. She was extremely depressed and did not leave her room or house for a significant period of time.

39. Plaintiff married her husband in January 2015, and gave birth to her daughter on November 3, 2015. After the birth of her daughter, Plaintiff began to have recurring feelings of depression and anxiety she did not understand.

40. In approximately mid-November, 2015, Plaintiff disclosed to her mother the relationship she had with Owen and the fact that he had sex with her during almost her entire senior year of high school.

41. Plaintiff's mother, Bernadine Cook, explained to Plaintiff that Owen's behavior was abuse and he should not have done that to her. Prior to her mother's reaction and declaration that Owen had abused her, Plaintiff thought Owen cared for her and loved her, and that it had been a real relationship. However, at the time, Plaintiff's only context for relationships had been a very brief relationship with her prior boyfriend and Plaintiff's prior sexual encounter with a 32 year old man when she was 14, and Owen never explained to Plaintiff that her sexual encounter with the 32 year old man constituted sexual abuse or was even improper in any way.

42. Plaintiff's mother immediately reported to Sugar-Salem Superintendent, Alan Dunn, Owen's sexual abuse of her daughter.

43. In late November 2015, Plaintiff reported Owen to the Madison County Sheriff's Office.

44. Beginning in January 2016, due to her increased feelings of panic, anxiety and depression, Plaintiff began counseling with another licensed counselor. During the course of therapy,

Plaintiff for the first time understood that she had been groomed by Owen from the time she was fifteen (15) years old to have sex with him once she was the age of majority.

45.   Plaintiff fully understood for the first time during therapy in the spring of 2016 that her relationship with Owen was not consensual, but the result of Owen's inappropriate actions toward her so he could have sex with her, and that Sugar-Salem had a duty to prevent and protect her from Owen's actions.

### COUNT ONE
### VIOLATION OF TITLE IX
### Hostile Learning Environment/Sexual Harassment

46.   Plaintiff realleges and incorporates by reference paragraphs 1 through 45 as though fully set forth herein.

47.   Owen had authority and power over Plaintiff as it related to his authority as a school counselor at Sugar-Salem High School, who took it upon himself to provide counseling services to Plaintiff.

48.   Sugar-Salem is an educational institution which receives federal funding and is therefore subject to the mandates of 20 U.S.C. § 1681 *et seq.* ("Title IX").

49.   Beginning in the fall of 2010 and continuing through May 2014, Owen engaged in a series of sexual assaults, sexual abuse, molestation and sexual harassment towards and/or against Plaintiff, based upon her sex, which altered the terms and conditions of her educational experience at Sugar-Salem High School in such a manner that it barred Plaintiff's access to educational opportunities or benefits, and/or limited her ability to participate in, or benefit from, her education environment, and/or created a hostile or abusive education environment.

50.   As a counselor, Owen was a person who had a duty to report and prevent sexual misconduct under Title IX.

51.   Sugar-Salem had knowledge of Owen's conduct due to his regular activity of removing Plaintiff from class for hours at a time and the principal and other management-level employees of Sugar-Salem High School being aware of and observing Owen's actions toward and attachment to Plaintiff.

52.   Sugar-Salem had a duty to investigate and stop Owen's actions.  However, Sugar-Salem and/or its agents did nothing to investigate or stop Owen's actions.

53.   As a direct and proximate result of Sugar-Salem's actions and/or failure to act, Plaintiff has suffered and will continue to suffer emotional distress consisting of outrage, shock and humiliation, based upon the discrimination she experienced. Further, Plaintiff has suffered and will continue to suffer a loss of educational opportunities.

## COUNT TWO
## VIOLATION OF 42 U.S.C. § 1983
### Equal Protection

54.   Plaintiff realleges and incorporates by reference paragraphs 1 through 53 as though fully set forth herein.

55.   By engaging in the above-described actions and/or inaction, and by acting pursuant to a custom, practice, and policy, Sugar-Salem, acting under color of state law, violated Plaintiff's federally protected civil rights under 42 U.S.C. § 1983, including Plaintiff's right to be free from discrimination on the basis of sex.

56.   Sugar-Salem failed to enact policies and procedures or adequately train its employees to prevent Owen's sexual abuse and grooming of Plaintiff.

57.   In engaging in the above-described actions and/or inaction, Sugar-Salem acted intentionally, recklessly, and/or with deliberate indifference to Plaintiff's well-being, all under color of

state law to deprive Plaintiff of her constitutionally protected rights to be free from sex discrimination.

58.    As a direct and proximate result of Sugar-Salem's actions and/or failure to act, Plaintiff has suffered and will continue to suffer emotional distress consisting of outrage, shock and humiliation, based upon the discrimination she experienced.

**COUNT THREE**
**NEGLIGENCE PER SE**
(As against all Defendants)

59.    Plaintiff realleges and incorporates by reference paragraphs 1 through 58 as though fully set forth herein.

60.    Pursuant to Idaho Code § 18-919, "any person acting or holding himself out as . . . a psychotherapist . . . who engages in an act of sexual contact with a patient or client, is guilty of sexual exploitation by a medical care provider."

61.    Idaho Code § 18-919 provides the applicable duty of care of a psychotherapist not to engage in sexual contact with a patient or client.

62.    Idaho Code § 18-919 was intended to prevent the type of harm Owen's actions inflicted upon Plaintiff.

63.    Plaintiff is a member of the class of persons Idaho Code § 18-919 was designed to protect, in that she was a patient or client of Owen.

64.    Owen's violation of Idaho Code § 18-919 was the proximate cause of Plaintiff's injury.

65.    Sugar-Salem is liable for Owen's actions through the doctrine of respondeat superior because Owen's actions were committed within the scope of Owen's employment with Sugar-Salem, Owen's actions toward Plaintiff were committed on Sugar-Salem's premises, and Owen was otherwise under the direction or control of Sugar-Salem when Owen's actions toward Plaintiff occurred.

66.   As a direct and proximate result of Owen and Sugar-Salem's actions and/or failure to act, Plaintiff has suffered and will continue to suffer past, present and future health-related expenses, and pain and suffering, in an amount to be proven at trial.

## COUNT FOUR
## TORT IN CHILD ABUSE
(As against all Defendants)

67.   Plaintiff realleges and incorporates by reference paragraphs 1 through 66 as though fully set forth herein.

68.   Pursuant to Idaho Code § 6-1701(1), "[a]n action may be brought by or on behalf of any child against any person who has: (b) [s]exually abused any child as defined in section 18-1506, Idaho Code. . . ."

69.   Additionally, pursuant to Idaho Code § 6-1701(2), "[i]f an act prohibited under subsection (1) of this section involves employment-related circumstances as provided under section 6-1607(2), Idaho Code, then an action may be brought under the common law by, or on behalf of, any child against the employer of the person who committed the act, subject to the requirements of section 6-1607, Idaho Code."

70.   Idaho Code § 18-1506 provides, "It is a felony for any person eighteen (18) years of age or older, with the intent to gratify the lust, passions, or sexual desire of the actor, minor child, or third party, to: (a) Solicit a minor child under the age of sixteen (16) years to participate in a sexual act. . . ."

71.   Idaho Code § 18-1506 provides the applicable duty of care not to engage in or entice sexual contact with a minor under sixteen (16) years of age.

72.   Idaho Code § 18-1506 was intended to prevent the type of harm Owen's actions inflicted upon Plaintiff.

73.    Plaintiff is a member of the class of persons Idaho Code § 18-1506 was designed to protect, in that she was a minor under the age of sixteen at the time Owen groomed and enticed her to engage in sexual activity with him.

74.    Owen's violation of Idaho Code §18-1506 was the proximate cause of Plaintiff's injury.

75.    Sugar-Salem is liable for Owen's actions pursuant to Idaho Code § 6-1701(2) because Owen's actions were committed within the scope of Owen's employment with Sugar-Salem, and Owen's actions toward Plaintiff were committed on Sugar-Salem's premises, Owen was otherwise under the direction or control of Sugar-Salem when Owen's actions toward Plaintiff occurred.

76.    As a direct and proximate result of Owen and Sugar-Salem's actions and/or failure to act, Plaintiff has suffered and will continue to suffer emotional distress consisting of outrage, shock and humiliation, in an amount to be proven at trial.  Further, Plaintiff has incurred and will continue to incur health-related expenses as a result of Owen and Sugar-Salem's actions, in an amount to be proven at trial.

### COUNT FIVE
### NEGLIGENCE
(As against all Defendants)

77.    Plaintiff realleges and incorporates by reference paragraphs 1 through 76 as though fully set forth herein.

78.    Sugar-Salem and Owen owed Plaintiff a duty to act reasonably such that Plaintiff would not be injured as a student of Sugar-Salem or as a patient or client of Owen.

79.    Sugar-Salem failed to supervise, train, monitor, or investigate Owen and its other agents and employees, and such failure was unreasonable and negligent.

80.    As a result of Sugar-Salem and Owen's negligent acts, Plaintiff was injured.

81.     As a direct and proximate result of Owen and Sugar-Salem's actions and/or failure to act, Plaintiff has suffered and will continue to suffer past, present and future health-related expenses, and pain and suffering, in an amount to be proven at trial.

## COUNT SIX
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
(As against all Defendants)

82.     Plaintiff realleges and incorporates by reference paragraphs 1 through 81 as though fully set forth herein.

83.     Sugar-Salem and Owen owed Plaintiff a duty to act reasonably such that Plaintiff would not be injured as a student of Sugar-Salem or as a patient or client of Owen.

84.     Sugar-Salem failed to supervise, train, monitor, or investigate Owen and its other agents and employees, and such failure was unreasonable and negligent.

85.     As a result of Sugar-Salem and Owen's negligent acts, Plaintiff was injured.

86.     As a direct and proximate result of Owen and Sugar-Salem's actions and/or failure to act, Plaintiff has suffered and will continue to suffer emotional distress consisting of outrage, shock and humiliation, in an amount to be proven at trial.  Further, Plaintiff has incurred and will continue to incur health-related expenses as a result of Owen and Sugar-Salem's actions, in an amount to be proven at trial.

## COUNT SEVEN
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
(As against all Defendants)

87.     Plaintiff realleges and incorporates by reference paragraphs 1 through 86 as though fully set forth herein.

88.     Sugar-Salem and Owen's conduct was intentional or reckless.

89.     Sugar-Salem and Owen's conduct was extreme and outrageous.

90.   As a result of Sugar-Salem and Owen's intentional or reckless acts, Plaintiff was injured and suffered emotional distress, which injury includes but is not limited to depression, suicidal ideation, and panic attacks.  Plaintiff has suffered severe emotional distress.

91.   Based upon Sugar-Salem and Owen's conduct, Plaintiff has suffered severe emotional distress and will suffer past, present and future health-related expenses, and pain and suffering as a result of such severe emotional distress, in an amount to be proven at trial.

## COUNT EIGHT
## ASSAULT AND BATTERY
### (As Against All Defendants)

92.   Plaintiff realleges and incorporates by reference paragraphs 1 through 91 as though fully set forth herein.

93.   Owen groomed Plaintiff while she was a minor to engage in sexual activity with him when she turned eighteen (18), while she was his patient or client, and while she was a student at Sugar-Salem.

94.   Owen took advantage of Plaintiff's status as a minor, a patient or client, and student, to coerce her into a sexual relationship with him.

95.   Owen on numerous occasions touched Plaintiff physically, and in a sexually abusive manner, including having sex with Plaintiff on numerous occasions throughout Sugar-Salem High School.

96.   Owen's physical contact with Plaintiff was harmful and without consent due to Owen grooming Plaintiff while she was a minor, and being in a position of power over Plaintiff due to his status as her high school counselor and Plaintiff's status as a student.

97.   Plaintiff suffered severe emotional and physical harm due to Owen's physical and sexual abuse.

98.    Sugar-Salem is liable for Owen's actions through the doctrine of *respondeat superior* because Owen's actions were committed within the scope of Owen's employment with Sugar-Salem, Owen's actions toward Plaintiff were committed on Sugar-Salem's premises, and Owen was otherwise under the direction or control of Sugar-Salem when Owen's actions toward Plaintiff occurred.

99.    As a direct and proximate result of Owen's actions and/or failure to act, Plaintiff has suffered and will continue to suffer physical injury, health-related expenses and costs, as well as emotional distress consisting of outrage, shock and humiliation, reasonably occurring and likely to occur based upon the assault and batter she experienced.  Plaintiff is therefore entitled to general and compensatory damages, such amount to be proven at trial.

## ATTORNEY'S FEES

100.   As a further and direct result of Sugar-Salem and Owen's actions and/or failures to act, Plaintiff has been compelled to retain the services of counsel, and thereby incurred, and will continue to incur, costs, expert witness fees, and attorney fees which should be required to be paid by Sugar-Salem and Owen pursuant to Idaho Code § 12-121; 20 U.S.C. § 1681; and 42 U.S.C. § 1988.

## DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury as to all issues triable to a jury in this action.

## PRAYER FOR RELIEF

Wherefore, Plaintiff seeks judgment against Sugar-Salem and Owen as follows:

1.    For compensatory and general damages in an amount to be proven at trial, and any available equitable remedies;

2.    For punitive damages in an amount to be proven at trial;

3.      For attorney's fees pursuant to statute and costs of suit;

4.      For prejudgment interest on all amounts claimed; and

5.      For such other and further relief as the Court deems just and proper.

Dated this 26th day of April, 2017.

                                        ____/s/_____
                                        DeAnne Casperson, Esq.
                                        Holden, Kidwell, Hahn & Crapo, P.L.L.C.

G:\WPDATA\DC\19325 Torres\Pleadings\Complaint.Rev 2.wpd:dg