UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MIRIAM TORRES, fka MIRIAM SEVY,<br><br>    Plaintiff,<br><br>    v.<br><br>SUGAR-SALEM SCHOOL DISTRICT #332, a political subdivision of the State of Idaho, and BRYCE OWEN, individually and in his capacity as a former employee of Sugar-Salem School District,<br><br>    Defendants. | Case No. 4:17-cv-00178-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

# I. INTRODUCTION

Currently pending before the Court is Defendant Sugar-Salem School District's ("the District") Motion for Plaintiff's Implied Waiver of Priest-Penitent Privilege (Dkt. 31), and the District's Motion for Extension of Time to File Dispositive Motions (Dkt. 32). Having reviewed the record and briefs, the Court finds that the facts and legal arguments are adequately presented. Accordingly, in the interest of avoiding further delay, and because the Court finds that the decisional process would not be significantly aided by oral argument, the Court will decide the Motions without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(2)(ii). For the reasons set forth below, the Court finds good cause to DENY both Motions.

**MEMORANDUM DECISION AND ORDER- 1**

## II. BACKGROUND

In her Amended Complaint, Plaintiff Miriam Torres ("Torres") alleges that Defendant Bryce Owen ("Owen"), a former counselor at Sugar-Salem High School, sexually assaulted, abused, and harassed her from the fall of 2010 until May of 2014, while she was a student at Sugar-Salem High school. Torres sued the District for its role in causing her harm based on respondeat superior liability, its failure to supervise, train, and monitor Owen, and its failure to investigate allegations made against him. On September 14, 2018, the District filed its Motion for Plaintiff's Implied Waiver of Priest-Penitent Privilege (Dkt. 31), alleging Torres impliedly waived the privilege by putting confidential communications with her former religious leaders at issue in this suit. The District also seeks an extension of time to file dispositive motions, so that it may depose the Torres' religious leaders. Dkt. 32, at 2.

## III. ANALYSIS

### A. <u>Implied Waiver of Priest Penitent Privilege</u>

Federal Rule of Evidence 501 provides as follows:

> The common law—as interpreted by United States courts in the light of reason and experience—governs a claim of privilege unless any of the following provides otherwise:
> - the United States Constitution;
> - a federal statute; or
> - rules prescribed by the Supreme Court.
>
> But in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision.

Fed. R. Evid. 501 (emphasis added). Here, both Torres and the District agree that federal common law governs the issue of priest-penitent privilege in this case. Dkt. 31, at 4; Dkt. 36, at 5.

Federal courts have recognized the "priest-penitent privilege" before, but there are very few cases that have closely analyzed or fully explained the privilege. The Supreme Court has only recognized the privilege in dicta. *See Trammel v. United States*, 445 U.S. 40, 51 (1980) ("The priest-penitent privilege recognizes the human need to disclose to a spiritual counselor, in total and absolute confidence, what are believed to be flawed acts or thoughts and to receive priestly consolation and guidance in return."); *Totten v. United States*, 92 U.S. 105, 107 (1875) ("[S]uits cannot be maintained which would require a disclosure of the confidences of the confessional, or those between husband and wife.").

The Ninth Circuit has broadly described the privilege as "embracing any 'confession by a penitent to a minister in his capacity as such to obtain such spiritual aid as was sought and held out in this instance.'" *Mockaitis v. Harcleroad*, 104 F.3d 1522, 1532 (9th Cir. 1997) (quoting *Mullen v. United States*, 263 F.2d 275, 277 (D.C. Cir. 1958) ) (applying privilege to reverse a criminal conviction where a Lutheran communicant had confessed her crime to a minister as a condition for receiving communion and his testimony had been used to convict her), overruled on other grounds by *City of Boerne v. Flores*, 521 U.S. 507 (1997).

However, "[t]he Third Circuit has provided the most detailed guidance in applying the privilege." *United States v. Burgess*, No. 1:14-CR-2022-TOR, 2015 WL 13674174, at *2 (E.D. Wash. Mar. 4, 2015) (citing *In re Grand Jury Investigation*, 918 F.2d 374 (3d

**MEMORANDUM DECISION AND ORDER- 3**

Cir. 1990)). According to the Third Circuit, "[t]he privilege applies to protect communications made (1) to a clergyperson, (2) in his or her spiritual professional capacity (3) with a reasonable expectation of confidentiality." *Fabricant v. United States*, No. CR 03-01257-RSWL-1, 2015 WL 5923481, at *12 (C.D. Cal. Oct. 8, 2015).

The Third Circuit, in recognizing the privilege, drew on the 1973 Proposed Federal Rules of Evidence. These proposed rules set forth the following definitions and tenets:

> (a) Definitions. As used in this rule:
> (1) A "clergyman" is a minister, priest, rabbi, or other similar functionary of a religious organization, or an individual reasonably believed so to be by the person consulting him.
> (2) A communication is "confidential" if made privately and not intended for further disclosure except to other persons present in furtherance of the purpose of the communication.
> (b) General rule of privilege. A person has a privilege to refuse to disclose and to prevent another from disclosing a confidential communication by the person to a clergyman in his professional character as spiritual adviser.
> (c) Who may claim the privilege. The privilege may be claimed by the person, by his guardian or conservator, or by his personal representative if he is deceased. The clergyman may claim the privilege on behalf of the person. His authority so to do is presumed in the absence of evidence to the contrary.

*In re Grand Jury Investigation*, 918 F.2d at 380 (quoting Proposed Fed. R. Evid. 506, 56 F.R.D. at 247). These definitions and tenets, while not binding, help guide the Court's application of the privilege in these circumstances.

As with other privileges, a claimant can waive the priest-penitent privilege. The District argues that Torres impliedly waived the privilege by putting her communications with religious leaders at issue in this suit.

**MEMORANDUM DECISION AND ORDER- 4**

The Ninth Circuit has explained that an implied waiver of privilege occurs when: (1) the party asserts the privilege as a result of an affirmative act, such as filing suit; (2) through this affirmative act, the asserting party puts the privileged information at issue; and (3) allowing the assertion of privilege would deprive the opposing party of information vital to its defense. *Home Indemnity Co. v. Lane Powell Moss & Miller*, 43 F.3d 1322, 1326 (9th Cir. 1995) (citing *Hearn v. Rhay*, 68 F.R.D. 574, 581 (E.D. Wash. 1975). *See also United States v. Amlani*, 169 F.3d 1189. 1195 (9th Cir. 1999). An "overarching consideration is whether allowing the privilege to protect against disclosure of the information would be manifestly unfair to the opposing party." *Home Indemnity Co.*, 43 F.3d at 1326 (internal quotation omitted). While the Ninth Circuit applied this test in the context of implied waiver of the attorney-client privilege, it is equally applicable to claims of implied waiver of the priest-penitent privilege. *See Stevens v. Brigham Young Univ.-Idaho*, No. 4:16-CV-00530-DCN, 2018 WL 2974388, at *7 (D. Idaho June 11, 2018) (citing *Bittaker v. Woodford*, 331 F.3d 715, 720 (9th Cir. 2003) ("The Ninth Circuit has described the 'doctrine of implied waiver' in generic terms such that it could apply to any claim of privilege.").

After due consideration, the Court finds that Torres has not impliedly waived the priest-penitent privilege. Her claims that Owen groomed and sexually assaulted her, as well as her allegations against the District, do not put her communications with religious leaders at issue in this case. Any argument to the contrary misconstrues the implied waiver doctrine. Implied waiver does not occur simply because privileged communications may be relevant to a case. Rather, "if a party affirmatively uses

**MEMORANDUM DECISION AND ORDER- 5**

privileged information to support a claim or defeat a defense, it cannot protect related information that must be disclosed if the opposing party is to have a fair chance to refute the privileged evidence." *Swinomish Indian Tribal Cmty. v. BNSF Ry. Co.*, No. C15-0543RSL, 2016 WL 2610247, *1 (W.D. Wash. May 6, 2016) (citing *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162 (9th Cir. 1992); *Hearn*, 68 F.R.D. at 581). Here, Torres is not attempting to affirmatively use her privileged communications to support her claims or defeat a defense. She simply wishes to keep those privileged communications private.

In fact, the only reason Torres' communications with religious leaders may be relevant to this case is because Defendants have raised statute of limitations defenses. Essentially, the District asserts that if Torres' religious leaders indicated that Owen's conduct was illegal when she initially sought to confess her perceived wrongs, then the statute of limitations may have run on certain claims. However, the fact that Torres' confidential communications may help bolster one of the District's affirmative defenses is not enough for a finding of implied waiver of priest-penitent privilege. For that to occur, Torres herself must put the communications at issue in the suit.

Additionally, as Torres correctly points out, it is the Defendants' burden to prove every element of their affirmative defenses—not Torres'. *See Vaughn v. Vaughn*, 428 P.2d 50, 52 (1967) ("The defendant, in his answer to the complaint, alleged lack of consideration of the note as an affirmative defense and thus he was faced with the burden of proof on that issue."); *Payan v. Aramark Mgmt. Servs. Ltd. P'ship*, 495 F.3d 1119, 1122 (9th Cir. 2007) ("Payan is correct that because the statute of limitations is an

**MEMORANDUM DECISION AND ORDER- 6**

affirmative defense, the defendant bears the burden of proving that the plaintiff filed beyond the limitations period.").

The District argues that "[t]his is not about Defendant's affirmative defense; this is about proving and disproving facts alleged in [Torres'] complaint." Dkt. 39, at 6. But such an argument rests on a slippery slope. If courts were to waive privileges any time doing so could help prove or disprove facts alleged in a complaint, then under what circumstances would a court not waive the claimed privilege? The District's argument is also inconsistent with the Ninth Circuit's approach to implied waiver. While the risk that an opposing party will be deprived of information vital to its defense is one element to consider, and fairness to the opposing party is an "overarching consideration," a finding of implied waiver still requires that the party claiming the privilege put the privileged communications at issue in the suit—which is simply not the case here.

Finally, even if Torres had put the privileged communications at issue, it is unclear whether upholding the privilege will deprive the District of information vital to their defense. Torres claims she never discussed the legality of Owen's conduct with her religious leaders—only the moral implications of the relationship. Any claim that Torres' former religious leaders discussed the legality of Owen's conduct with her at the time of Torres' initial "confession" is, at this point, speculation.

The District asserts that Torres "went to her religious leaders to discuss the nature of her relationship with Defendant Owen prior to disclosing the relationship to her mother. The clear implication is that she thought that in some fashion the relationship with Defendant Owen is wrong. . . . If she had no belief that the relationship with

**MEMORANDUM DECISION AND ORDER- 7**

Defendant Owen was inappropriate or wrongful why would she go to the church?" Dkt. 39, at 6-7. The Court, however, finds this argument wholly unpersuasive.

Individuals may desire to confess and seek out religious guidance for a host of reasons that have nothing to do with the legality of their (or in this case, someone else's) actions. What Torres perceived as a moral wrong necessitating private discussion with her religious leaders has no bearing on whether she knew or should have known that Owen's actions may have been illegal. The Court understands that this is precisely why the District wishes to depose Torres' former religious leaders—to ascertain whether they discussed the legality of Owen's conduct with her. However, based upon the information currently before the Court, this appears to be little more than a fishing expedition. Because Torres has not placed her discussions with her former religious leaders at issue in this case, the Court will not allow such an expedition to occur. The District's motion (Dkt. 31) is DENIED.

### B. *Extension of Time to File Dispositive Motions*

Local Rule 6.1(a) states that "[a]ll requests to extend briefing periods . . . must be in writing and state the specific reason(s) for the requested time extension. Such requests will be granted only upon a showing of good cause." Dist. Idaho Loc. Civ. R. 6.1(a). Here, the District seeks an order extending the time to file dispositive motions "so that the necessary depositions of Plaintiff's bishop and stake president can be taken." Dkt. 32, at 2. However, as the Court has found that Torres did not impliedly waive the priest-penitent privilege, the District has not shown good cause for the requested extension. Accordingly, this motion (Dkt. 32) is DENIED.

**MEMORANDUM DECISION AND ORDER- 8**

# IV. ORDER

THE COURT HEREBY ORDERS:

1. The District's Motion for Plaintiff's Implied Waiver of Priest-Penitent Privilege (Dkt. 31) is DENIED.

2. The District's Motion for Extension of Time to File Dispositive Motions (Dkt. 32) is DENIED.

DATED: October 30, 2018

_____
David C. Nye
U.S. District Court Judge