UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MIRIAM TORRES, fka MIRIAM SEVY, | Case No. 4:17-cv-00178-DCN |
| Plaintiff, | **MEMORANDUM DECISION AND ORDER** |
| SUGAR-SALEM SCHOOL DISTRICT #322, a political subdivision of the State of Idaho, and BRYCE OWEN, individually and in his capacity as a former employee of Sugar-Salem District, | |
| Defendants. | |

## I. INTRODUCTION

Pending before the Court are Defendant Sugar-Salem School District #322's ("the District") first and second Motions to Reconsider. Dkts. 72, 80. In them, the District asks the Court to reconsider its Order (Dkt. 71) granting in part and denying in part the District's Motion for Summary Judgment (Dkt. 47). Having reviewed the record and briefs, the Court finds that the facts and legal arguments are adequately presented. Accordingly, in the interest of avoiding further delay, and because the Court finds that the decisional process would not be significantly aided by oral argument, the Court will decide the Motions without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B). Upon review, and for the reasons set forth below, the Court DENIES both Motions.

## II. DISCUSSION

The background of this case is set forth in the Court's prior Order on Defendants'

Motions for Summary Judgment (Dkt. 71, at 2–6), which the Court incorporates by reference here. In its Motions to Reconsider, the District asserts that various changes in the law provide grounds for the Court's reconsideration of its prior Order. The District also argues that Torres made a judicial admission that supports reconsideration.

## A. Legal Standard

Granting or denying a motion for reconsideration is a matter within a district court's discretion. *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000). A district court has inherent authority and wide latitude in controlling—among other things—its calendar and docket, as well as its orders and decisions. A district court "possesses the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient." *City of L.A. v. Santa Monica BayKeeper*, 254 F.3d 882, 885 (9th Cir. 2001) (quoting *Melancon v. Texaco, Inc.*, 659 F.2d 551, 553 (5th Cir. 1981)).

Ultimately, it is the Court's duty "to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. In certain circumstances, this may mean that a court must reconsider, modify, or even reverse a prior determination. Other times, this means a court must advance a case. Thus, the need to be right must co-exist with the need for progress in a particular case.

While the denial of a motion to dismiss or for summary judgment may be reconsidered at any time before final judgment, *see Preaseau v. Prudential Ins.*, 591 F.2d 74, 79-80 (9th Cir. 1979), "a party must first establish that they have the right to ask for reconsideration; that is to say, they must establish that one or more of the limited grounds for reconsideration are present. If that is the case, the moving party must then convince the

court that their purported reasons rise to the level of reversal," *United States ex. rel. Rafter H Constr., LLC v. Big-D Constr. Corp.*, 358 F. Supp. 3d 1096, 1098 (D. Idaho 2019).

Here, the District claims two bases for the Court's reconsideration: Rules 54(b) and 60(b)(6) of the Federal Rules of Civil Procedure. From a procedural standpoint, the District is incorrect that Rule 60(b)(6) provides a basis for reconsideration here because that provision applies only to final judgments, which the Court's prior Order is not. *See United States v. Martin*, 226 F.3d 1042, 1048 n.8 (9th Cir. 2000) ("Rule 60(b), like Rule 59(e), applies only to motions attacking final, appealable orders . . . ."); *see also Parsons v. Ryan*, 949 F.3d 443, 472 (9th Cir. 2020) ("A final decision is typically one which ends the litigation on the merits and leaves nothing for the court to do but execute judgment." (cleaned up)).[1] Nevertheless, Rule 54(b) establishes a ground for reconsideration in this scenario. Fed. R. Civ. P. 54(b) (providing that non-final orders "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities"); *City of L.A.*, 254 F.3d at 885. However, although a court has the power to revisit its decision, "as a rule the court should be loathe to do so in the absence of extraordinary circumstances such as where the initial decision was clearly erroneous and would work a manifest injustice." *Christianson v. Colt. Indus. Operating Corp.*, 486 U.S. 800, 817 (1988) (cleaned up). Therefore, the District bears the burden of persuading the Court to reverse its prior Order.

---

[1] Although unfamiliar to some, "'cleaned up' is a new parenthetical used to eliminate unnecessary explanation of non-substantive prior alterations." *United States v. Steward*, 880 F.3d 983, 986 n.3 (8th Cir. 2017); *see also* Jack Metzler, *Cleaning Up Quotations*, 18 J. App. Prac. & Process 143 (2017).

**B. Motions to Reconsider**

In its first Motion to Reconsider, the District asserts that "there have been two intervening changes in controlling law." Dkt. 72-1, at 2. The first change the District identifies is whether the applicable notice-of-claim statute, under the Idaho Tort Claims Act ("ITCA"), bars Torres's state law claims against the District in light of *D.A.F. v. Lieteau*, 456 P.3d 193 (Idaho 2019). The second is whether this Court's decision in *Jameson v. University of Idaho*, No. 3:18-cv-00451-DCN, 2019 WL 5606828 (D. Idaho October 30, 2019), changes the Court's analysis in this case.

In its second Motion to Reconsider, the District brings *Karasek v. Regents of the University of California*, 956 P.3d 1093 (9th Cir. 2020), to the Court's attention.[2] The District argues that *Karasek* is also an intervening change of law that warrants dismissal of Torres's Title IX claim against the District. Lastly, the District argues that Torres made a judicial admission that alters the Court's statute of limitations analysis as to all Torres's claims against the District. The Court will address these four issues in turn.

*1. The ITCA's Notice-of-Claim and Other Requirements*

The District raises what it sees as three changes in the law from *Lieteau* related to the applicable notice of claim, which warrant the Court's reconsideration. Dkt. 72-1, at 4. None of the District's arguments ultimately convince the Court to change its ruling. But, to be fair, the Court acknowledges that its explanation on the notice-of-claim issue was not entirely clear and candidly incorrect in part. For instance, in footnote five of its prior Order,

---

[2] To be precise, the District pointed out *Karasek v. Regents of the Univ. of Cal.*, 948 F.3d 1150 (9th Cir. 2020), but the Court discusses the Ninth Circuit's last word on the issue in the above-mentioned opinion.

the Court stated:

> Idaho Code section 6-906 outlines the applicable *statute of limitations* for ITCA claims against government entities and employees acting "within the course or scope of [] employment." *While this statute may apply to the District*, it does not apply to Owen as the Court has already found that his actions were well outside the course and scope of his employment. Torres' remaining independent tort claims are, therefore, *likely subject to their own varying statutes of limitations*.

Dkt. 71, at 28 n.5 (emphasis added). Additionally, the Court stated that it was important to note "that the ITCA has a notice requirement specifically for minors," and then quoted Idaho Code § 6-906A and went on to explain how the "proper inquiry for when the 180-day ITCA notice period begins to run is when a person had knowledge of facts which would cause a reasonably prudent person to know they had a claim." *Id.* at 28.

Several issues must be set straight. First, the ITCA has applied to Torres's state law claims against the District for the entirety of this case. *See Walker v. Shoshone Cty.*, 739 P.2d 290, 293 (Idaho 1987) (explaining that the plaintiffs' "complaint against the county was grounded in tort" and that the plaintiffs "had to follow the procedures outlined" in the ITCA). Recently, the Idaho Supreme Court reiterated the reason for the ITCA's applicability, stating: "The Idaho Legislature enacted the ITCA as a comprehensive abrogation of sovereign immunity regarding tort actions. The ITCA now governs when the government may be sued for a tort." *Lieteau*, 456 P.3d at 196. Such has been true since the ITCA's enactment.

Second, the ITCA's notice-of-claim statutes—with respect to both adults and minors—and its statute of limitations are distinct procedural requirements and have been throughout this entire case as well. *See Dodge v. Bonners Ferry Police Dep't*, 450 P.3d

298, 303 (Idaho 2019) ("Compliance with the [ITCA's] notice requirement is a mandatory condition precedent to bringing suit, the failure of which is fatal to a claim, no matter how legitimate. . . . The notice requirement is in addition to the applicable statute of limitations." (quoting *Cobbley v. City of Challis*, 59 P.3d 959, 962 (Idaho 2002)); *see also Lieteau*, 456 P.3d at 199 ("[F]iling a notice of tort claim is a separate procedural requirement from a statute of limitations" (citing *Osborn v. Salinas*, 958 P.2d 1142, 1144 (Idaho 1998))). This is apparent because *Cobbley* and *Osborn* inarguably predated this case and *Dodge* and *Lieteau* merely restated the distinction.

Third, Idaho Code § 6-906 is *not* a statute of limitations. The Court's statement otherwise was simply incorrect. Indeed, the ITCA has two notice-of-claim statutes: one for adults and one for minors. Section 6-906 is the notice-of-claim statute for adults who wish to bring a claim against a state governmental entity. It requires that adult to file a notice of claim with the appropriate individual or entity "within one hundred eighty (180) days from the date the claim arose or reasonably should have been discovered, *whichever is later*." Idaho Code § 6-906 (emphasis added). Section 6-906A, on the other hand, requires a minor to file a notice of claim "one hundred eighty (180) days after [that minor] reaches the age of majority or six (6) years from the date the claim arose or should reasonably have been discovered, *whichever is earlier*." Idaho Code § 6-906A (emphasis added). "The legislature enacted I.C. § 6-906A to protect the rights of injured minors until they are old enough to take appropriate action." *Osborn*, 958 P.2d at 1144. It is important to differentiate between these two notice-of-claim statutes because they have the possibility of different results based on their differing deadlines and rules for calculating such deadlines. *See Lieteau*, 456

P.3d at 199 ("In many cases, the minors would be better off under the notice requirement that applies to adults . . . .").

Finally, section 6-911 is the ITCA's statute of limitations. It states, "Every claim against a governmental entity permitted under the provisions of this act or against an employee of a governmental entity shall be forever barred, unless an action is begun within two (2) years after the date the claim arose *or reasonably should have been discovered, whichever is later*." Idaho Code § 6-911 (emphasis added). This statute applies to Torres's state law claims against the District. *See Walker*, 739 P.2d at 293. It does not, however, apply to Torres's state law claims against Owen. As the Court noted in its prior Order, Owen's "actions were well outside the course and scope of his employment" and "Torres' remaining independent tort claims are, therefore, likely subject to their own varying statutes of limitations." Dkt. 71, at 28 n.5 (emphasis added).

In short, under the ITCA, the timeline for an adult to file a notice of claim and to meet the statute of limitations depends on when the claim arose or reasonably should have been discovered, whereas a minor has until 180 days after he or she reaches the age of majority, at the latest, to file a notice of claim.

These clarifications dispose of the District's first two arguments, which relate to the ITCA's applicability and the difference between the notice-of-claim requirement and statute of limitations. *See* Dkt. 72, at 4–6. *Lieteau* did not change the law on those points; it merely restated it. That leaves the District's last argument. The District argues that "this Court applied the ITCA's notice requirement for minors as the appropriate standard for notice in this case" and that under *Lieteau*, Torres's notice of claim was unquestionably

late. However, the Court did not apply the notice requirement for minors; rather, the Court simply noted that it existed. The Court went on to explain the notice-of-claim requirement for adults and the issue of fact that exists in this case—when a person "is aware of such facts that would cause a reasonably prudent person to inquire further into the circumstances surrounding the incident"—citing *BHA Investments, Inc. v. City of Boise*, 108 P.3d 315, 321 (Idaho 2005). Dkt. 71, at 28.

That question remains before the Court and precludes summary judgment in this case. The question of fact is whether Torres's claim accrued, as she alleges, when she spoke with her mother in 2015 or whether it accrued at an earlier date, as the District argues. *Lieteau* did nothing to change this situation. Instead, it held that Idaho Code § 6-1701 claims (tort actions in child abuse cases) are subject to section 6-906A's notice-of-claim deadline and that such a deadline is strict. 456 P.3d at 199. *Lieteau* did not answer whether section 6-906A applies in this case, where the issue of when a person is aware of such facts that would cause a reasonably prudent person to inquire into the circumstances surrounding the incident is in dispute and remains a material question of fact.

*Doe v. Durtschi*, 716 P.2d 1238 (Idaho 1986), is illustrative of this point. There, the school district urged the Idaho Supreme Court to affirm summary judgment as to two of the plaintiffs, arguing "that plaintiffs failed to give notice of their claims within the required time period." *Id.* at 1245. The court reversed summary judgment, however, explaining "[c]learly unresolved questions of fact remain[ed] regarding when the adult plaintiffs ought to have given notice of their claim." *Id.* The court concluded that summary judgment was improper because "plaintiffs allege[d] they knew nothing of the role of the school district

until a point well within" the notice-of-claim required period. *Id.* at 1246. Such is the case here as well. The outcome remains the same: the District's Motion for Summary Judgment as to Torres's state law claims is denied because the point at which her claims arose is still a question of fact which the jury must decide.

### 2. Title IX and Section 1983 Statute of Limitation

The District next argues that the Court's decision to dismiss the plaintiff's Title IX claim in *Jameson* means that the Court must also dismiss Torres's Title IX and section 1983 claims. The Court disagrees. It is correct that the appropriate statute of limitation for Title IX and section 1983 claims is indeed Idaho Code § 5-219(4). *See, e.g.*, *Stanley v. Trustees of Calif. State Univ.*, 433 F.3d 1129, 1134 (9th Cir. 2006) ("Title IX claims are subject to the applicable state statute of limitations for personal injury actions."); *Joseph v. Boise State Univ.*, 998 F. Supp. 2d 928, 948 (D. Idaho 2014) (first citing *Wilson v. Garcia*, 471 U.S. 261, 275 (1985); and then citing *Stanley*, 433 F.3d at 1134) (concluding that Idaho Code § 5-219 applies to Title IX and section 1983 claims); *Osborn*, 958 P.2d at 1145 ("The applicable statute of limitations for section 1983 claims is I.C. § 5-219(4).").

However, dismissal remains premature because a question of fact exists as to when the claim accrued, as discussed above. When the claim accrues depends on when the plaintiff has knowledge of the critical facts of his or her injury. *E.g.*, *Bibeau v. Pac. Nw. Research Found. Inc.*, 188 F.3d 1105, 1108 (9th Cir. 1999), *opinion amended on denial of reh'g*, 208 F.3d 831 (9th Cir. 2000). As the Court previously stated, "Material disputes exist as to when Torres knew, or with reasonable care and diligence should have known, that she had a cause of action against Owen and the District." Dkt. 71, at 28. Until that question

of fact is resolved, it is too soon for the Court to know whether Torres's Title IX and section 1983 claims were filed within the statute of limitations, and in turn whether her claims must be dismissed.

Contrary to what the District thinks, *Jameson* does not change this conclusion. Although there are many similarities between the circumstances of *Jameson* and those of this case, the two situations are factually distinguishable on several important points. Jameson was a college student, whereas Torres was a minor when many of her allegations occurred. In *Durtschi*, "minority was a factor in deciding whether a claim reasonably should have been discovered, which consequently would determine the date from which the [statute of limitations] would run." 716 P.2d at 1247 (cleaned up).[3] So too here, Torres's youth is a factor in the key question—when a claim reasonably should have been discovered. Further, Jameson both personally reported her sexual assault to the university and personally dealt with the situation soon after the abuse occurred. Torres instead alleges that her mom reported the situation and was the one dealing with the District regarding the situation between Torres and Owen, and that Torres herself was thus not reasonably aware of her claim.[4] Dkt. 74, at 11. The Court's prior Order dealt with why this is a question of fact and discussed applicable cases. Dkt. 71, at 29–30. The Court will not repeat those

---

[3] Although this case deals with the ITCA, the Court finds it persuasive on this issue.

[4] The District points out that Torres admitted "that she was present in meetings involving her parents and District personnel where the texts and the directive that Owen should have no contact with [her] were discussed." The District also points to others' depositions to the same end. Dkt. 75, at 10–11. With all the competing evidence on what Torres knew and did not know, the question of her awareness regarding the District's wrongdoing during the time it took place is for the jury to decide. *See Bibeau*, 188 F.3d at 1108 ("What a plaintiff knew and when he [or she] knew it are questions of fact." (cleaned up)).

points. Accordingly, the District's argument for the Court to reconsider is ultimately unpersuasive.

### 3. Title IX Under Karasek

In its second Motion to Reconsider, the District contends that the Ninth Circuit's *Karasek* opinion changed the law of Title IX in such a way that the Court should reconsider and reverse its previous denial of summary judgment. Dkt. 80, at 8. However, the District's arguments are unavailing. To begin, the District essentially repackages many of its previous arguments with a *Karasek* bow, and nothing about *Karasek* changes the Court's conclusion. If anything, the statements of law in *Karasek* and the factual differences between *Karasek* and this case further solidify the Court's conclusion.

*Karasek* is factually distinguishable on many grounds. For example, there the school's actions were not dilatory in response to two of the plaintiffs' reports.[5] Indeed, the court noted that the school was not idle in the months following the plaintiffs' respective reports of wrongdoing, but rather sanctioned one of the assailants while he still attended school and placed the other on interim suspension, barring him from campus. *Karasek*, 956 F.3d at 1106–09. By contrast, no preventive actions were taken after the report in this case while Torres was still in school. *Cf. Williams v. Bd. of Regents of Univ. Sys. of Ga.*, 477 F.3d 1282, 1296–97 (11th Cir. 2007) (holding that the university was deliberately indifferent where it did not hold a disciplinary hearing until eleven months after the

---

[5] The Ninth Circuit discussed a third plaintiff in *Karasek*, but affirmed the district court's dismissal of her claim as well because her argument that the school failed to investigate her complaint was "demonstrably false" and "misrepresented the record." 956 F.3d at 1111. Moreover, her assailant was not a student or faculty member of the school. *Id.* Torres's situation is even more distinguishable from this third plaintiff's case for the same reasons.

plaintiff reported that she had been gang-raped by members of the basketball team at which point several of the assailants no longer attended the university).

Additionally, one of the plaintiffs in *Karasek* "never interacted with [the assailant] again after the assault, aside from seeing him from afar on one occasion. And there [was] no indication that [the plaintiff] told [school officials] that she regularly met with [the assailant] when meeting with them . . . ." 956 F.3d at 1109. The other plaintiff "identifie[d] no instance when she ever saw [the assailant] again after reporting her sexual assault." *Id.* at 1110. Here, there was both a second report of wrongdoing and district records of continued contact between Torres and Owen. These facts are important because they directly relate to whether the District was deliberately indifferent in how it handled the reports in this case. *See id.* at 1105.

As to the Ninth Circuit's legal statements in *Karasek*, they support the Court's prior order. In that case, the Ninth Circuit reiterated much of the law applicable in this case. Among its other statements of law, the court restated the two theories for liability under Title IX at issue in this case: actual notice and an official policy of deliberate indifference. 956 at 1104 (citing *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998)). The *Karasek* court also explained that violations of school policies, "standing alone, will not constituted deliberate indifference," but they may be relevant. *Id.* at 1108. Here, the District's violations of its own policy regarding employees texting students is relevant.

To be sure, the Ninth Circuit did note that it had not previously addressed "pre-assault Title IX claims," held that such claims are "a cognizable theory of Title IX liability," and clarified the standard by listing four elements. *Id.* at 1112. But it is clear

MEMORANDUM DECISION AND ORDER - 12

from the *Karasek* court's discussion that these pre-assault claims fall under the official policy theory of liability. As explained below, that has no bearing on the Court's prior Order. In short, *Karasek* does not change the Court's conclusion on Torres's Title IX claim.

The District's arguments are also unpersuasive because they misapprehend the Court's previous Order, the posture of this case, and the law. For instance, the District asserts that the "single complaint upon which the Court found . . . a genuine issue of material fact necessitating the denial of the District's Motion for Summary judgment" was whether or not the text messages reported to the District by Torres's mother were sexually motivated. Dkt 80, at 9. That simply misstates the facts and this Court's prior Order. Additional reasons for denial of summary judgment include the repeated reports from Torres's mom regarding Owen's inappropriate text messages, the clear violation of the District's policy prohibiting employees from texting students, the records and testimony involving Owen removing Torres from class, and so on. The Court also noted that it must view such evidence in a light most favorable to Torres, as she is the non-movant. Dkt. 71, at 35.

The District also says that there "is no dispute that the District . . . had 'actual knowledge' of the sexual relationship between Owen and [Torres]" and therefore "it is incumbent on [Torres] to utilize what the *Karasek* [court] labeled a pre-assault claim." Dkt. 80, at 10. But the Court already addressed this argument and concluded to the contrary. Dkt 71, at 32–33; *id.* at 37 n.9 ("Because the Court finds that a reasonable jury could conclude that the District had actual notice, the Court need not address Torres' 'official policy of deliberate indifference argument."). The second part of the District's argument

misstates the law. As the Court already explained in its prior Order—and *Karasek* and Supreme Court precedents confirm—two theories exist as to liability for a school under Title IX: actual notice and an official policy that violates Title IX. Dkt. 71, at 31. "Pre-assault claims" relate to the latter theory—that a school's official policy violates Title IX. *See Karasek*, 956 F.3d at 1112. The Court has already concluded that Torres's Title IX claim survived summary judgment on her theory of actual notice. Consequently, Torres may proceed under either theory, but she need not prove her official policy claim unless she does not rely on her actual notice theory. *Karasek* does nothing to change this conclusion.

The rest of the District's arguments similarly lack merit because they bring up further issues that the Court has already thoroughly addressed and ignore the totality of the evidence in this case. In short, having reviewed *Karasek* and the Court's prior Order, the Court remains unpersuaded by the District's arguments that summary judgment should be granted on Torres's Title IX claim.

### 4. *Judicial Admission*

Lastly, the District argues that Torres made a judicial admission in her Response to its first Motion to Reconsider (Dkt. 74) and that such judicial admission bars all her claims against the District under the applicable statutes of limitations. Dkt. 80, at 13, 16. The claimed judicial admission was Torres's statement that "she did not incur damages until after the grooming—it was not until Owen actually had sex with Torres (and each time he had sex with Torres) that the damages she seeks in this action were incurred." *Id.* at 13–14. However, this does not qualify as a judicial admission.

"Judicial admissions are formal admissions in the pleadings which have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact." *Am. Title Ins. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988) (cleaned up). To be a judicial admission, a statement must be deliberate, clear, and about a factual matter within the party's knowledge. *Jonibach Mgmt. Trust v. Wartburg Enters., Inc.*, 750 F.3d 486, 491 n.2 (5th Cir. 2014); *Maloney v. Scottsdale Ins.*, 256 F. App'x 29, 32 n.3 (9th Cir. 2007) ("Judicial admission apply only to factual statements, not statements of law." (cleaned up)). As opposed to statements made in pleadings, "statements of fact contained in a brief may be considered admissions of the party in the discretion of the district court." *Am. Title Ins.*, 861 F.2d at 227.

Here, Torres's statement was made in a brief, not a pleading, and therefore whether it was a judicial admission is within the sound discretion of the Court. Although Torres's statement was made on a question of fact—when her claims against the District accrued— it was not clear and deliberate in the context of this case. The issue here, as explained, depends on when she discovered her damages and when a reasonable person should have discovered her damages. Because Torres's statement appears to have been inadvertent and did not directly relate to those questions, and was instead made with respect to the point at which damages could have accrued, the Court will not deem the statement a binding judicial admission.

Indeed, Torres explains her statement in a later brief. A trial court must accord due weight to a party's explanation of its statements in subsequent pleadings, amendments, or briefs. *See Sicor Ltd. v. Cetus Corp.*, 51 F.3d 848, 859–60 (9th Cir. 1995) (holding that the

district court erred by finding a party's statement in its complaint a judicial admission, because the party "retracted its judicial admission by subsequently recharacterizing the alleged oral agreement"). Torres clarifies that her position remains "that she had no *knowledge* of her damages until she disclosed Owen's actions to her mother, after [she] had a breakdown subsequent to the birth of her daughter in November 2015," and that "[n]othing has changed." Dkt. 82, at 9–10. She points out that the damages for the causes of action in this case "could not have accrued until Owen had sex with her is clearly different from when Torres *discovered, or became aware of her injury*" *Id.* at 10. In doing so, Torres apparently recognizes the key question of fact that "a reasonable juror could conclude that Torres did not have sufficient facts to place a reasonably prudent person on inquiry notice of her claims against Owen or the District until many years after the actual incidents occurred," as stated by the Court. Dkt. 71, at 30. In light of these explanations, Torres's statement does not remove from the jury the question of when the statutes of limitation began to run in this case. Put differently, the issues of equitable estoppel and reasonable discovery remain, and therefore summary judgment would be improper at this point.

### C. Conclusion

For the foregoing reasons, none of the cases brought to the Court's attention—*Lieteau*, *Jameson*, or *Karasek*—change the Court's prior conclusions. Additionally, Torres's statement was not a judicial admission, especially given her subsequent explanation of it. The Court's prior Order stands.

MEMORANDUM DECISION AND ORDER - 16

## III. ORDER

The Court HEREBY ORDERS:

1. The District's first Motion to Reconsider (Dkt. 72) is **DENIED**.

2. The District's second Motion to Reconsider (Dkt. 80) is also **DENIED**.

DATED: September 24, 2020

David C. Nye
Chief U.S. District Court Judge