UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MIRIAM TORRES, fka MIRIAM SEVY, | Case No. 4:17-cv-00178-DCN |
| Plaintiff, | **MEMORANDUM DECISION AND ORDER** |
| SUGAR-SALEM SCHOOL DISTRICT #322, a political subdivision of the State of Idaho, and BRYCE OWEN, individually and in his capacity as a former employee of Sugar-Salem District, | |
| Defendants. | |

## I. INTRODUCTION

Pending before the Court are four of Defendant Sugar-Salem School District #322's ("the District") Motions in Limine. Dkts. 68, 84, 93, 97. In them, the District seeks the exclusion of certain evidence and testimony at trial.[1] Having reviewed the record and briefs, the Court finds that the facts and legal arguments are adequately presented. Accordingly, in the interest of avoiding further delay, and because the Court finds that the decisional process would not be significantly aided by oral argument, the Court will decide the motions without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B).

Upon review, and for the reasons set forth below, the Court DENIES the first

---

[1] Additionally, Plaintiff Miriam Torres's unopposed Motion to Seal is before the Court. Dkt. 103. In accordance with Fed. R. Civ. P. 5.2(d), Dist. Idaho Loc. Civ. R. 5.3, and good cause appearing, Plaintiffs' Motion to Seal is GRANTED. *See also Kamakana v. City & Cty of Honolulu*, 447 F.3d 1173, 1186 (9th Cir. 2006) (affirming the sealing of medical records).

motion, and GRANTS in PART and DENIES in PART the other three motions.

## II. BACKGROUND

The general factual background of this case is set forth in the Court's previous Order (Dkt. 71, at 2–6), which is incorporated here by reference. As a brief summary, Torres alleges that her high school counselor, an employee of the District Defendant Bryce Owen, began to engage in inappropriate counseling and grooming of her to have sex with him when she was fifteen years old. Owen allegedly held counseling sessions frequently and began texting Torres in violation of the District's policy. Eventually, Torres's mother, Bernadine McCandless, discovered the messages and reported them to the District's superintendent, the school's principal, and another counselor at the high school. Contact between Owen and Torres continued, and McCandless requested the District to stop the interactions. As the conversations progressed, they became more sexual in nature. After Torres turned eighteen, Owen and Torres began to have sex. Torres graduated and moved to Utah with the relationship ending thereafter. Later on, Torres discussed what had occurred with McCandless, realized that she believed what had happened was unlawful, and reported it to the District, the police, and filed this lawsuit.

Torres' Amended Complaint includes nine counts. Count One (Violation of Title IX), Count Two (Sex Discrimination in violation of 42 U.S.C. § 1983), and Count Nine (Negligent Supervision) she brought only against the District. She brough the remaining claims against both the District and Owen. These claims include: Count Three (Negligence per se), Count Four (Tort of Child Abuse), Count Five (Negligence), Count Six (Negligent Infliction of Emotional Distress), Count Seven (Intentional Infliction of Emotional

Distress), and Count Eight (Assault and Battery). Dkt. 22.

Later in this case, the District and Owen filed their respective Motions for Summary Judgment. Dkts. 46, 47. Torres voluntarily dismissed Count Four (Tort of Child Abuse). Dkt. 53, at 30. She maintained, however, that the rest of her claims should survive summary judgment. The Court ultimately ruled that all Torres's claims survived summary judgment except Count Three (Negligence per se) and Count Eight (Assault and Battery) against the District. *See generally* Dkt. 71.

The District thereafter filed a bevy of motions. It filed its two Motions to Reconsider (Dkts. 72, 80), which the Court denied (Dkt. 105). The District also filed the instant four Motions in Limine. The Court will address the content of each motion in turn below.

### III. LEGAL STANDARD

"Motions in limine are well-established devices that streamline trials and settle evidentiary disputes in advance, so that trials are not interrupted mid-course for the consideration of lengthy and complex evidentiary issues." *Miller v. Lemhi Cty.*, No. 4:15-cv-00156-DCN, 2018 WL 1144970, at *1 (D. Idaho Mar. 2, 2018) (cleaned up); *see also Hana Fin., Inc. v. Hana Bank*, 735 F.3d 1158, 1162 n.4 (9th Cir. 2013). "The term 'in limine' means 'at the outset.' A motion in limine is a procedural mechanism to limit in advance testimony or evidence in a particular area." *United States v. Heller*, 551 F.3d 1108, 1111 (9th Cir. 2009) (quoting *In Limine*, Black's Law Dictionary 803 (8th ed. 2004)).

Because "[a]n in limine order precluding the admission of evidence or testimony is an evidentiary ruling," *United States v. Komisaruk*, 885 F.2d 490, 493 (9th Cir. 1989) (citation omitted), "a district court has discretion in ruling on a motion in limine," *United*

*States v. Ravel*, 930 F.2d 721, 726 (9th Cir. 1991). Further, in limine rulings are preliminary and, therefore, "are not binding on the trial judge [who] may always change his mind during the course of a trial." *Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000).

## IV. DISCUSSION

### A. First Motion in Limine (Dkt. 68)

During discovery, Torres disclosed a retained expert witness, Thomas Tueller, who has prepared a report on his opinions regarding the alleged sexual grooming that took place in this case. Specifically, Tueller intends to testify as to "the seven steps of grooming" generally and how they relate to Owen's actions in this case. *See* Dkt. 53-18. In its First Motion in Limine, the District very broadly seeks exclusion of Tueller's testimony "in any fashion that pertains to any issue related to the District." Dkt. 68-1, at 2. Torres contends that Tueller's testimony is appropriate. The Court agrees with Torres for the reasons below.[2]

#### 1.  *Content of the Report*

The District first asserts that Tueller's report must comply with Federal Rule of Civil Procedure 26 and Local Civil Rule 26.2. The District highlights language from the local rule that "the scope of subsequent testimony by an expert witness must be limited to those subject areas identified in the disclosure report or through other discovery such as a deposition." Dist. Idaho Loc. Civ. R. 26.2. Other than in one paragraph of Tueller's written

---

[2] Although the Court denies the District's request, the District is correct to limit its request to the exclusion of testimony regarding its liability because the grooming testimony indisputably relates to the issues of Owen's liability.

report, which states that Owen used his position as a school counselor to gain trust and access to Torres, Tueller does not comment on the District's involvement, knowledge, actions, assistance, standard of care, liability, or any other fault it had related to Owen's conduct. The entire report focuses on Owen's actions. Due to the absence of testimony related to the District, the District elected not to depose Tueller. Now, the District asks the Court to limit Tueller's testimony "to the disclosed analysis and opinions set out in his report, which do not include any opinions or allegations against the District." Dkt. 68-1, at 6.

Torres responds that the District fails to appreciate the legal significance of Owen's actions to its liability, as Owen is its employee. She states that legal theories under the common law, Title IX, the Fourteenth Amendment, and the Idaho Tort Claims Act supply the link from Owen's conduct to the District's liability through the doctrine of *respondeat superior*. Therefore, testimony about Owen's actions may serve to establish the District's liability by operation of law.

Both parties make astute points; both points are reconcilable. Tueller must indeed constrain his testimony to the disclosed analysis and opinions set out in his report. Dist. Idaho Loc. Civ. R. 26.2. However, Tueller may testify as to Owen's conduct, which *could* establish the District's liability. Ultimately, the testimony and evidence presented at trial will determine that issue. That said, because the District's request is so broad and Owen's conduct could relate to the District, the Court will not grant the District's request.[3]

---

[3] Although the Court already ruled "as a matter of law that Owen's tortious conduct was outside the scope of his employment," (Dkt 71, at 17–18), Owen's conduct in many ways may still be relevant to the District.

*2. Foundation*

The District then argues that Tueller's opinions do not meet the foundational requirements of being helpful or reliable under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). In particular, the District cites *State v. Henley*, in which the Oregon Supreme Court held that, under Oregon law, a witness's grooming testimony should have been scientifically validated before it was admitted. 422 P.3d 217, 304 (Or. 2018). The District suggests that Tueller's testimony (1) is devoid of a basis to show that his opinions are derived from an accepted scientific methodology, (2) is not based on sufficient data or proper principles as it comes from only his experience, and (3) is therefore unreliable and will not assist the trier of fact. The Court disagrees with the District.

Federal Rule of Evidence 702 allows a qualified expert to testify "in the form of an opinion or otherwise" where:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

> (b) the testimony is based on sufficient facts or data;

> (c) the testimony is the product of reliable principles and methods; and

> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. The inquiry into the admissibility of expert testimony is "a flexible one" where "[s]haky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion." *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010). "When evaluating specialized or technical expert opinion

MEMORANDUM DECISION AND ORDER - 6

testimony, the relevant reliability concerns may focus upon personal knowledge or experience." *United States v. Sandoval-Mendoza*, 472 F.3d 645, 655 (9th Cir. 2006).

To begin, *Henley* is not merely non-binding authority, it is unpersuasive as well. There, an Oregon rule of evidence, as opposed to Federal Rule of Evidence 702 that of course applies here, was at issue. *Id.* at 227. Although the Oregon state evidentiary rule and the federal body of law have some overlap, they are not the same. The rules have received decades of interpretative gloss from different courts: Oregon courts have developed the Oregon rule, whereas the federal rule has been developed by federal courts.

*Henley* marks a divergence in the two bodies of law. Indeed, federal courts have admitted grooming testimony without requiring it to pass a scientific validation test. For instance, in *United States v. Hitt*, the Fifth Circuit directly rejected the party's argument that there was not an adequate scientific basis for the expert witness's grooming testimony, given the flexibility and discretion allowed in the district court's gatekeeping role. 473 F.3d 146, 159 (5th Cir. 2006). Similarly, in *Light v. Martel*, the court determined that an expert witness's testimony on grooming was admissible without passing a scientific validation. No. 09-00177 JSW, 2009 WL 4456385, at * 7–10 (N.D. Cal. Nov. 30, 2009) (collecting cases).

The District's focus on scientific validation is misplaced. The United States Supreme Court has explained that a district court's role is not to distinguish between "scientific" knowledge and "technical" or "other specialized" knowledge because "[t]here is no clear line that divides the one from the others" and "conceptual efforts to distinguish the two are unlikely to produce clear legal lines capable of application in particular cases."

*Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 148 (1999). Instead, what is required is that the trial judge determine whether the testimony has a reliable basis—not necessarily scientific validation. *See id.* at 149–50 ("[R]elevant reliability concerns may focus upon personal knowledge or experience."). Therefore, the District's argument that Tueller's testimony needs a basis in scientific validation is unavailing.

Next, the District's assertion that Tueller relies only on his experience is inaccurate. It is true that Tueller relies on his extensive experience of being involved in the treatment of over 10,000 victims of child sexual abuse, which in itself assuages many concerns about reliability. However, Tueller also relies on his bachelor's degree in psychology, master's degree in clinical social work, and hours of training on how to treat children who have experienced traumatic effects of abuse. He has also presented on the seven steps of grooming at various conferences. In short, Tueller's proposed testimony appears to have a reliable basis in experience and knowledge on the topic.

Lastly, Tueller provided his methodology of identifying and assessing the seven steps of grooming and applied it to the facts of this case in his written report. Tueller's methodology may assist the jury to understand Owen's actions, and it is open to the District's attack on cross-examination.

In conclusion, the Court, in its role as gatekeeper, is not persuaded that Tueller's methodology and opinions are unreliable or unhelpful. Tueller's testimony need not have a scientifically validated basis under federal law. Based on Tueller's education, extensive training and experience, and methodological application of the seven-step theory of grooming to the facts of this case, the Court determines that his proposed testimony is

reliable and may assist the jury in better understanding this case. Stated differently, the requirements of Rule 702 are satisfied. Experience alone, or in conjunction with other knowledge, skill, training, or education, may very well provide a sufficient foundation for expert testimony. *See* Fed. R. Evid. 702; *Kumho Tire Co., Ltd.*, 526 U.S. at 148–50. The Court holds that such is the case here: Tueller's expert testimony will not be excluded.

### 3. Conclusion

For the foregoing reasons, Tueller's testimony will not be excluded in the broad manner that the District requests. Accordingly, the District's first Motion in Limine is DENIED.

## B.  Second Motion in Limine (Dkt. 84)[4]

During discovery, Torres disclosed several other expert witnesses whose testimony the District also moves the Court to exclude. The first is a Licensed Clinical Professional Counselor, DaLynn Moore, who provided counseling to Torres from October 12, 2016, to September 14, 2017. The second is a Nurse Practitioner, Tauni Rowberry, who treated Torres for anxiety and panic attacks on February 24, 2018. The third group of experts includes Nathan E. Bradfield, PHHNP-BC; Robert Meredith, DO; and Nicholas Parker, MD. All three are health care providers at Seasons Medical. Together, they treated Torres from November 2015 to November 2017. All these witnesses were timely disclosed as experts on August 27, 2018. The expert discovery deadline was October 26, 2018.

Due to perceived deficiencies in the descriptions of the disclosures of these

---

[4] Due to a formatting issue in the original motion (Dkt. 84), the District filed an errata motion (Dkt. 95). Any citation to Dkt. 95, therefore, relates to the District's Second Motion in Limine.

witnesses, the District seeks sanctions to the tune of either outright exclusion of these witnesses from trial or a limitation of their testimony to the information in the medical records provided. Torres resists these sanctions on several grounds. The Court will address the issues the parties raise in turn. Before diving into the witness-specific arguments, however, the Court will address several preliminary issues.

### 1.  Preliminary Issues

Torres's preliminary response is that the District could have asked her to cure the alleged deficiency or sought a motion to compel to that same end. Torres then asserts that the District essentially "laid in wait, hoping [Torres's] non-compliance would doom her ability to offer any expert testimony." Dkt. 94, at 5. At bottom, she suggests that the District "should not be allowed to complain now after making no objection." Dkt. 94, at 6.

For its part, the District states that there is no duty to move to compel under Federal Rule of Civil Procedure 37, and Torres's argument oddly shifts the burden of properly disclosing her witnesses from herself to the District. The District states that Torres's "claim stands the entire discovery and notice process on its head. The District is not under any obligation to identify and point out to [Torres] her failures." Dkt. 98, at 7.

The District is correct. Motions to compel are permissive, and no rule requires parties to file them prior to seeking Rule 37(c) sanctions, which of course include exclusion of a witness's testimony. *See* Fed. R. Civ. P. 37(a)(1) ("[A] party *may* move for an order compelling disclosure or discovery." (emphasis added)); Fed. R. Civ. P. 37(c)(1).

Moreover, the non-binding cases Torres cites do not support her suggested bright-line rule. Rather, those cases stand for the proposition that not filing a motion to compel

may go to one aspect of a harmlessness analysis or whether a district court abuses its discretion. In *Carrico v. Lewis Tree Service, Inc.*, the court did point out that the defendant appeared to have laid in wait, hoping that the plaintiff's non-compliance would lead to exclusion of his expert witness. No. 2:15-CV-25-FL, 2016 WL 6459599, at *3–4 (E.D.N.C. Oct. 31, 2016). But that was in the context of whether the deficiency was harmless and was merely one of several reasons for the court's finding of harmlessness. *Id.* Similarly, in *Kondragunta v. Ace Doran Hauling & Rigging Co.*, not filing a motion to compel was only one aspect of the court's harmlessness analysis. No. 1:11-cv-01094-JEC, 2013 WL 1189493, at *8 (N.D. Ga. Mar. 21, 2013). Lastly, in *Griffith v. General Motors Corp.*, not seeking an order to compel a more detailed disclosure was only one reason the Eleventh Circuit held that the district court did not abuse its discretion in denying a motion for sanctions. 303 F.3d 1276, 1282–83 (11th Cir. 2002). In short, the rulings in these cases do not establish a rule disallowing parties from seeking Rule 37(c) sanctions when they have not filed a prior motion to compel.

The duty to ensure proper disclosures is on the disclosing party, not the receiving one. Fed. R. Civ. P. 26(a). Accordingly, the Court rejects Torres's preliminary contention.

After making this preliminary argument, Torres maintains that her disclosure for Moore "fully meets the requirement of Rule 26(a)(2)(C)"; however, she concedes that her disclosures for Rowberry, Bradfield, Meredith, and Parker "likely should have described the testimony in more detail." Dkt. 94, at 9.

Federal Rule of Civil Procedure 26(a)(2)(A) states that "a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal

Rule of Evidence 702, 703, or 705." If an expert is not retained, as is the case with the witnesses here, the disclosure must convey "the subject matter" and "summary of the facts and opinions to which the witness is expected to testify." Fed. R. Civ. P. 26(a)(2)(C)(i)– (ii). The purpose of these disclosure requirements is to "prevent surprise testimony by ensuring that opposing parties are aware of the nature of the expert opinions prior to trial." *DR Sys., Inc. v. Eastman Kodak Co.*, No. 09cv1625-H (BLM), 2009 WL 2982821, at *3 n. 2 (S.D. Cal. Sept. 14, 2009) (cleaned up).

If a party fails to provide information or identify a witness as required by the rule, the party is not allowed to use that information or witness to supply evidence at trial, unless the failure was substantially justified or is harmless. Fed. R. Civ. P. Rule 37(c)(1). Rule 37(c)(1) "gives teeth to [the Rule 26(a) disclosure] requirements by forbidding the use at trial any information not properly disclosed under Rule 26(a)." *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001). Rule 37(c)(1) is recognized as a broadening of a court's sanctioning power and is "self-executing" and "automatic." *Id.* Moreover, because of the automatic nature of this sanction, courts are not required to make a finding of willfulness or bad faith prior to excluding expert testimony at trial. *See Hoffman v. Constr. Protective Servs., Inc.*, 541 F.3d 1175, 1180 (9th Cir. 2008).

The trial court has wide latitude in using its discretion to issue sanctions under Rule 37(c)(1). *See Yeti by Molly*, 259 F.3d at 1106. The burden is on the disclosing party to show that the deficiency in properly disclosing an expert witness was substantially justified or harmless. *See id.* at 1106–07 (explaining that it is implicit in Rule 37(c)(1) that burden is on party facing sanctions to prove harmlessness).

Here, the language of the disclosures confirms the wisdom of Torres's concession. Those disclosures merely state Rowberry, Bradfield, Meredith, and Packer will testify as to their treatment of Torres consistent with the information contained in their medical records. This is far from "a summary of the facts and opinions to which the witness is expected to testify," Fed. R. Civ. P. 26(a)(2)(C), and is plainly insufficient. *Gleed v. AT&T Servs., Inc.*, No. 13-12479, 2016 WL 1451532, at *5 (E.D. Mich. Apr. 12, 2016) ("[T]he mere production of medical records *does not* satisfy subsection (C) disclosure requirements."); *Carillo v. B & J Andrews Enters., LLC*, No. 2:11-cv-01450-RCJ-CWH, 2013 WL 394207, at *5–6 (D. Nev. Jan. 29, 2013) (collecting cases). Thus, for Moore, the Court will assess whether the disclosure was sufficient, whereas the Court will limit its analysis to whether the conceded deficiency was justified or harmless as to the other expert witnesses.

### 2.  *Moore—Licensed Clinical Professional Counselor*

The District propounds various arguments that Moore's testimony should be excluded. The Court will address them in turn.

First, the District asserts that Torres did not disclose a summary of facts and opinions to which Moore is expected to testify. Specifically, the District argues that stating testimony will be consistent with counseling does not satisfy Federal Rule of Civil Procedure 26(a)(2)(C). But the District's factual premise that the Moore disclosure was so limited is unfounded.

Torres included Moore in her initial disclosures, produced Moore's counseling records in April 2018, again disclosed Moore as a non-retained expert on August 27, 2018,

and supplemented a few inadvertently missing records on January 4, 2019. *See* Dkt. 94, at

5. The disclosure at issue for Moore stated:

> Ms. Moore provided counseling to Plaintiff to address her Post Traumatic
> Stress Disorder, Generalized Anxiety Disorder, and Major Depressive
> Disorder both at Integrated Counseling and Wellness and Mental Wellness
> Centers. A copy of her counseling records has been produced in discovery
> (PL00001-PL000036). Ms. Moore will provide testimony and opinions,
> consistent with her counseling with Plaintiff, including but not limited to, the
> impact of Bryce Owen's action on Plaintiff's mental health, the grooming
> process used by Mr. Owen that precipitated the sexual exploitation of
> Plaintiff, and Plaintiff's feelings of guilt in spite of being a victim.

Dkt. 94, at 2.[5] The disclosure conveys sufficient information to apprise Defendants of what

Moore's testimony will be. Thus, the District's first argument is unpersuasive.

In the alternative, the District argues, even if the Court determines the disclosure

was sufficient, Moore's testimony should be limited to information contained in her

provided medical records, which does not include District's liability, grooming, causation

as to PTSD, or depression. However, because Torres's disclosure complied with Rule

26(a)(2)(C), the Court sees no good cause to prospectively issue such a ruling. If the

District has an objection to specific testimony that is ultimately presented at trial, the

District may lodge its objection at that time.[6] However, prospectively limiting Moore's

testimony does not appear to be a sound use of the Court's discretion.

---

[5] Additionally, Torres was questioned during her deposition about her counseling with Moore. Although
such questioning is not determinative of whether the disclosure was sufficiently informative, it assuages
concerns about whether the District will endure surprise testimony, which is the purpose of the required
disclosures.

[6] Citing *Thompson v. United States*, No. 4:17-cv-63, 2019 WL 149553 (S.D. Ga. 2019), the District argues
that Moore should not be able to testify regarding the cause of Torres's Post Traumatic Stress Disorder,

(Continued)

Lastly, the District argues that Moore should not be allowed to testify that Torres was abused because Moore did not come to that conclusion on her own; rather, Torres told her of the abuse from the beginning. This argument is uncompelling. It is tantamount to saying that a doctor cannot testify that a patient had an ear infection if the patient happened to enter the doctor's office saying he or she had an ear infection. The Court rejects this argument and finds no basis to exclude a timely and properly disclosed treating physician's professional opinions simply because the patient stated a self-diagnosis. Moreover, nothing suggests that Moore is incapable of forming her own professional opinions irrespective of what her patients tell her. The District may employ a line of questions on cross-examination on this issue, but Moore will be allowed to testify.

In sum, the disclosure for Moore complied with the requirements of Federal Rule of Civil Procedure 26(a)(2)(C), and the District's arguments are unavailing.

### 3. *Rowberry, Bradfield, Meredith, and Packer*

The District next contends that Rowberry, Bradfield, Meredith, and Packer should be disallowed from testifying for some of the same reasons given above. Because Torres concedes the corresponding disclosure were deficient—and the Court agrees—the Court need only determine whether the shortcomings were justified or harmless. The issue

---

depression, or anxiety "as there is no mention of causation in Ms. Moore's medical records" and because she "did not provide a written report with her disclosure, which is required if she wants to testify as to causation." Dkt. 95, at 5. The Court disagrees. Although the summary disclosure is not exemplary of clarity, it does contain the issue of causation when read fairly. And, unlike the doctor in *Thompson* who should have disclosed a Rule 26(a)(2)(B) report because he wasn't the treating physician and instead relied on others' opinions to prepare his testimony for trial, Moore directly treated Torres and has relied exclusively on her own professional observations in forming her testimony. *See id.* at *10; *Goodman v. Staples the Office Superstore, LLC*, 644 F.3d 817, 826 (9th Cir. 2011).

narrows even further because Torres's arguments focus solely on harmlessness.

"The party facing sanctions bears the burden of proving that its failure to disclose the required information was substantially justified or is harmless." *R & R Sails, Inc. v. Ins. Co. of Pennsylvania*, 673 F.3d 1240, 1246 (9th Cir. 2012) (citing *Torres v. City of L.A.*, 548 F.3d 1197, 1213 (9th Cir. 2008)). Factors that may assist the court in determining whether "a violation of a discovery deadline is justified or harmless are: (1) prejudice or surprise to the party against whom the evidence is offered; (2) the ability of that party to cure the prejudice; (3) the likelihood of disruption of the trial; and (4) bad faith or willfulness involved in not timely disclosing the evidence." *Lanard Toys Ltd. v. Novelty, Inc.*, 375 F. App'x 705, 713 (9th Cir. 2010) (citation omitted).

Here, the District did not depose these witnesses due to the vague nature of the disclosures and, more importantly, due to the lack of facts or opinions that clearly related to the District's alleged liability. At this juncture in this case, mere months before trial and with discovery and dispositive briefing closed, there is little that can be done to cure the prejudice caused by the missed opportunity to depose the witnesses. However, the District has had the disclosures for several years. The attendant medical records are electronically searchable and not overly extensive. Indeed, Rowberry's medical records are only 110 pages, of which Torres has directed the District's attention to 7 specific pages; Bradfield, Meredith, and Packer's combined records are only 67 pages, with the focus being on 22 identified pages. Thus, although the Court does not find the deficient disclosures harmless, the harm is not significant.

MEMORANDUM DECISION AND ORDER - 16

For this reason, the Court will impose a lesser sanction than outright exclusion of the witnesses—one which both sides proposed: that is, limiting these witnesses' testimony to the information contained in their respective medical records. Under the circumstances of this case, the Court finds this to be an appropriate sanction.

    *4. Conclusion*

For the foregoing reasons, the District's second Motion in Limine is GRANTED in PART and DENIED in PART. The Court will not prospectively limit Moore's testimony, but Rowberry's, Bradfield's, Meredith's, and Packer's respective testimonies must be limited to the information included in their corresponding disclosed medical records.

## C. Third Motion in Limine (Dkt. 93)

In its next motion, the District seeks to exclude testimony regarding seven specific topics, which the Court will address in turn. As a threshold matter, the District repeatedly contends that a limiting instruction will not be effective as to evidence that is admissible against Owen, but arguably is not admissible against the District. The District's contentions are unpersuasive. As explained below, some of the testimony will be admitted against the District, so it does not necessitate or call for a limiting instruction in any event. And some of the inadmissible testimony against the District is either duplicative as to the points being made by the admissible evidence, therefore carrying little danger of unfair prejudice, or does not present such a danger of unfair prejudice that a limiting instruction would be ineffective.

Under Federal Rule of Evidence 105, "[i]f the court admits evidence that is admissible against a party or for a purpose—but not against another party or for another

purpose—the court, on timely request, must restrict the evidence to its proper scope and instruct the jury accordingly." In *Bruton v. United States*, the Supreme Court ruled that a limiting instruction did not effectively protect the criminally accused against the prejudicial effect of admitting in evidence the confession of a codefendant which implicated him and violated his constitutional right to confrontation. 391 U.S. 123, 136–37 (1968). The *Bruton* "decision does not, however, bar the use of limited admissibility with an instruction where the risk of prejudice is less serious." Fed. R. Evid. 105 advisory committee's note. Indeed, while there are some limited "contexts in which the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored," in the vast majority of circumstances "the jury can reasonably be expected to follow" limiting instructions. *Id.* at 135 ("A defendant is entitled to a fair trial but not a perfect one. It is not unreasonable to conclude that in many such cases the jury can and will follow the trial judge's instructions to disregard [inadmissible] information." (cleaned up)).

Here, the District's constitutional rights are not in jeopardy of being violated, and the Court does not deem this a scenario in which the jury cannot, or will not, follow the Court's instruction. Moreover, the Court will not exclude highly probative and admissible evidence against Owen merely because the District has little confidence in the jury. In this case, an instruction to the jury of what evidence cannot be used against the District is the proper course.

### 1. McCandless's Testimony Regarding the Text Messages

The District anticipates that McCandless will testify about ostensibly "flirtatious"

text messages that Owen sent to Torres, which McCandless claims to have in turn reported to the District. The District contends that testimony regarding the text messages should be excluded because it is hearsay, unable to be properly authenticated, and unfairly prejudicial. None of these arguments lead the Court to prospectively exclude the testimony.

First, the anticipated testimony would not be hearsay. An out-of-court statement offered for the truth of the matter asserted in the statement, commonly known as hearsay, is generally inadmissible in court. Fed. R. Evid. 801(c), 802. The flip side is that a statement is "*not* hearsay if offered for any purpose other than the truth of whatever the statement asserts." *United States v. Lopez*, 913 F.3d 807, 826 (9th Cir. 2019). A paradigmatic example of this other-purpose category is a statement that is "introduced to prove that the person to whom the statement was communicated had notice of something." *United States v. Lane*, No. CR-12-01419-PHX-DGC, 2013 WL 3716601, at *2 (D. Ariz. July 13, 2013) (first citing *Kunz v. Utah Power & Light Co.*, 913 F.2d 599, 605 (9th Cir.1990); and then citing *Gibbs v. State Farm Mut. Ins. Co.*, 544 F.2d 423, 428 (9th Cir.1976)). Here, testimony about the text messages, their nature, and reporting them to the District is not hearsay because it is being offered to prove the notice that McCandless gave the District as opposed to the truth of what was in fact typed in those messages.[7] Moreover, the texts are not hearsay against Owen because, with proper foundation, they are statements against a party opponent. Fed. R. Evid. 802(d)(2)(A).

---

[7] In its reply brief, the District conditionally concedes that this conclusion is correct: If "McCandless can lay the necessary foundation that text message was sent by Defendant Owen to [Torres], and that she saw the text message, she may be able to testify that she told the District that Defendant Owen texted [Torres] and she wanted it to stop. That arguably falls within the notice exception to the exclusion of hearsay evidence."

Second, whether a proper foundation will be laid for such testimony is an issue the Court will leave until trial. That said, the Court is skeptical about whether authentication is even an issue. If the text messages themselves are introduced, they will of course need to be authenticated. Fed. R. Evid. 901(a). However, if McCandless testifies merely about her perception of the text messages, then authentication will not be necessary because there will be nothing to authenticate. Torres explains, "McCandless is not seeking to assert word for word what was stated in the text messages, but the general character of the text messages that caused her serious concern and led her to report to the District." Dkt. 99, at 5. Thus, in this latter scenario, the District's arguments regarding authentication are wholly unnecessary.

Lastly, the Court will not exclude the testimony under Federal Rule of Evidence 403, which allows the Court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. The probative value of the testimony regarding whether the District was on notice of the inappropriate text messages between Torres and Owen is extremely significant. It relates to essential aspects of many of Torres's claims against the District: notice and, in turn, deliberate indifference.[8] Moreover, the

---

[8] Later in its brief, the District concedes this point. *See* Dkt. 93-1, at 9 (describing the relevant issue as "whether or not the District had the requisite knowledge of the relationship before it happened" and explaining that it "must be judged solely on its acts, which requires [Torres] to establish notice to the District of the relationship"). Additionally, Owen cannot make the prejudice argument under Rule 403 because the

(Continued)

District's arguments regarding unfair prejudice expressly presuppose that the testimony is hearsay and that effective cross-examination will not be available. Both premises are inaccurate. The testimony is not hearsay, and the District will have ample opportunity to cross-examine McCandless.

In conclusion, some of the District's other arguments, which did not win the day in briefing and which the Court will not reiterate here, are potentially great points for cross-examination. Nevertheless, the Court sees no basis to prospectively exclude McCandless's disputed testimony. *See Vasquez v. City of Idaho Falls*, No. 4:16-cv-00184-DCN, 2020 WL 1860394, at *3 (D. Idaho Apr. 13, 2020) (explaining that rulings are often best "deferred until trial so that questions of foundation, relevancy, and potential prejudice[, among others,] may be resolved in proper context" (cleaned up)).

### 2.  *Torres's Testimony Regarding the Alteration of Her Attendance Records*

Next, the District anticipates that Torres will testify that she saw Owen, and heard statements from him on the topic of, altering her attendance records during the course of their interactions. The District contends that such testimony is inadmissible hearsay against it. The District also suggests that the testimony will be so unfairly prejudicial that a limiting instruction simply will not do. The District points out a key distinction: the evidence may be admissible as to Owen's liability while inadmissible as to the District's. To an extent, the Court agrees.

---

texts weigh heavily on the grooming issue and his inappropriate conduct. So, Rule 403 does not prevent the texts from coming in as against Owens. The real issue then is not whether Rule 403 should bar the evidence; rather, the question is whether the texts should be limitedly admitted only as against Owen. Because the evidence is relevant to the issue of notice, the answer to that question is in the negative

The statements and actions are not hearsay as they relate to Owen. In that context, they have a purpose other than to prove the truth of the matter asserted (*i.e.*, Owen's state of mind, intent, or plan) and they are offered against him as a party opponent. *Lopez*, 913 F.3d at 826 (Statements are "*not* hearsay if offered for any purpose other than the truth of whatever the statement asserts."); Fed. R. Evid. 801(d)(2) (statements against a party opponent are not hearsay). Thus, they are admissible to prove his liability.

However, those points do not apply to the District. Against the District, Owen's *statements* that he altered the records would be offered to prove the truth of that matter asserted. And they do not fit the opposing-party-statement exemption because Owen was not acting within the scope of his employment or in a representative capacity in the moments of his misconduct. *See id.*; Dkt. 71, at 17–18 (ruling "as a matter of law that Owen's tortious conduct was outside the scope of his employment"). Thus, Owen's statements are inadmissible hearsay as to the District.[9]

What is left to decide then is whether Owen's *conduct* in altering Torres's attendance records was hearsay. It is important to note first that assertive nonverbal conduct, such as pointing at someone, constitutes a "statement" for hearsay purposes. Fed. R. Evid. 801(a); 2 McCormick on Evidence § 250 (8th ed.). On the other hand, nonassertive nonverbal conduct is not a "statement" and is categorically not hearsay. For example, a person raising an umbrella is not intending to assert that "it is raining," nor is a motorist

---

[9] There is one caveat to this ruling. It assumes there is not testimony that Owen made those statements in the presence of another District employee such as the attendance registrar. If that assumption is incorrect, then the ruling will be reversed at trial.

who drives forward at a green light intending to assert that "the light is green." "The conduct offered in the one instance to prove it was raining and in the other that the light was green involves no intent to communicate the fact sought to be proved . . . ." *Id.*

Here, Owen's actions are not hearsay for the purpose of proving he altered Torres's attendance records. Owen's conduct was not intended to assert, "I am altering Torres's attendance records." Instead, his actions of altering Torres's attendance records were, quite to the contrary, intended to surreptitiously and deceptively assert that Torres was in class when she in fact wasn't, while not being discovered that he altered her records. Consequently, any testimony from Torres regarding Owen's *actions* to alter her attendance records is admissible against both Owen and the District.

### 3. Torres's and Others' Testimony About Owen's Grooming and Sex Statements

The District also expects Torres, and unnamed other witnesses, to testify as to Owen's actions and statements through the course of his relationship with Torres and alleged grooming. The District requests the Court to exclude all this testimony or instruct the jury of its limits against the District. Beyond the uncompellingly broad scope of this request, many of the District's arguments neglect the fact that Owen is a defendant in this case as well. The testimony is highly probative as to his intent and otherwise against him and cannot be excluded. It may be relevant against the District as well. The specifics and context of the evidence will tell. Thus, although much of the language in the District's brief is potentially useful for a proposed limiting instruction, such as that Owen's actions cannot lead to the District's negligence per se, it does not persuade the Court to prospectively exclude evidence of Owen's relevant actions and statements under Federal Rules of

Evidence 402, 403, or otherwise.

    *4.  Any Testimony Regarding Torres's Alleged Injuries As Caused By Any Action or Inaction of the District*

The District's next argument is wholly uncompelling. The District argues that no person should be allowed to testify that its action or inaction led to Torres's alleged injuries because those injuries are solely Owen's fault and such testimony would be too prejudicial against the District. But, of course, if the District was on notice of the relationship, failed to take appropriate action, was deliberately indifferent to Owen's actions, or somehow else violated the law, as alleged, then the District can be held liable for Torres's injuries under Title IX, § 1983, and Idaho law. Indeed, that is what the law demands and what this case is about. The Court agrees with Torres that this argument is merely another unmeritorious attempt for the District to secure summary judgment on the causes of action against it. The Court has denied the District's repeated attempts to do so, and the Court denies the District's request yet again.

    *5.  Any Testimony About Owen's Failure to Report 2012 Student Abuse*

The District additionally expects testimony to be given that Owen failed to report a student-on-student incident of sexual abuse in 2012. The District claims that, because the Court already rejected Torres's argument that the failure provided notice to the District, any testimony on the topic is irrelevant. The District quotes the following from the Court's previous Order:

> Here, Torres points to two facts in support of a finding of actual notice. First, she claims the District had actual notice because it was aware that "Owen had previously failed to report to authorities sex abuse of a 13 year-old by a

MEMORANDUM DECISION AND ORDER - 24

> 17 year-old, and instead of reporting, had the parties keep the abuse quiet and
> had the 17 year-old do nothing more than write a letter of apology." Dkt. 53,
> at 16. However, the Court finds this incident did not alert the District to a
> substantial risk that Owen would abuse Torres or any other student. While it
> may show some propensity to disregard reporting requirements, or even a
> lack of concern for sexual abuse, it does not show that Owen himself posed
> a substantial risk of abuse.

Dkt. 93-1, at 11 (quoting Dkt. 71, at 33). Torres argues that Owen's 2012 failure to report

is significantly probative as to the material facts of the District's deliberate indifference,

negligence, negligent supervision, and so on. *Samuelson v. Or. State Univ.*, 725 F. App'x

598, 598 (9th Cir. 2018) ("To be liable for harassment under Title IX, the recipient of

federal funds . . . must have actual notice of, and be deliberately indifferent to, the

harassment." (citing *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 277 (1998)));

Dkt. 71, at 47 ("Based on the evidence in the record, a reasonable jury could find that the

District owed a duty to Torres, that duty was breached, the breach was the proximate cause

of Torres' injury because it was foreseeable to the District that some harm could happen,

and that Torres suffered damages."); *Brooks v. Logan*, 903 P.2d 73, 79 (Idaho 1995)

("[T]he duty a school district owes to its pupils is to anticipate reasonably foreseeable

dangers and to take precautions protecting the children in its custody from such dangers.")

The Court agrees with Torres. First, in its quoted Order, the Court merely rejected

the argument that the District's knowledge of Owen's failure to report the 2012 incident

put the District *on notice* of Owen's actions with regard to Torres. Critically, the Court did

not state that such testimony would be irrelevant to these other issues. Additionally, Torres

is correct that evidence regarding the District's knowledge of Owen's failure has a

tendency to make those issues more probable—issues which are of paramount consequence

in this case. Fed. R. Evid. 401. In short, the District's request is denied because the evidence is relevant.

### 6. *Torres's and Others' Testimony of Sexual Abuse*

The District also prognosticates certain testimony from Torres, McCandless, and Moore regarding Owen's sexual abuse of Torres and what was discussed among them. From Torres's brief, it does not appear entirely certain that the testimony the District predicts will in fact be given at trial. For example, Torres points out that her expert witnesses will discuss their opinions, whereas Torres and McCandless intend to testify as to their experiences and beliefs. Because the specific testimony that will be given is uncertain, the Court exercises its discretion to withhold a ruling on these issues.

### 7. *Torres's Testimony That She Was Coerced or Manipulated to Have Sex*

The District lastly seeks to have Torres's testimony that she was coerced or manipulated to have sex with Owen excluded. The Court denies the District's request. To begin, the District's arguments are procedurally improper. To have a court reconsider its ruling, "a party must first establish that they have the right to ask for reconsideration; that is to say, they must establish that one or more of the limited grounds for reconsideration are present. If that is the case, the moving party must then convince the court that their purported reasons rise to the level of reversal." Dkt. 105, at 2–3 (citing *United States ex. rel. Rafter H Constr., LLC v. Big-D Constr. Corp.*, 358 F. Supp. 3d 1096, 1098 (D. Idaho 2019)). As has been explained, the Court allows only one motion for summary judgment per party. Dkt. 17, at 1 n.1. The District has already filed its Motion for Summary Judgment (Dkt. 47) and two Motions to Reconsider (Dkts. 72, 80), all three of which the Court in

pertinent part has denied (Dkts. 71, 105). The District's arguments are essentially just another motion to reconsider disguised in the clothing of a motion in limine without any change in facts, intervening law, or other extraordinary circumstance to justify reconsideration of the Court's prior rulings.[10] For this reason alone, the District's arguments here are rejected.

Additionally, the merits of the District's arguments are entirely baseless. The District cherry-picks a quote from an Idaho Supreme Court opinion to support its request to exclude Torres from testifying that she was coerced or manipulated into having sexual intercourse with Owen after her eighteenth birthday: "We do not find that the act of sexual intercourse between consenting adults is enough to create *a constitutional right* for a high school student involved in a sexual relationship with a teacher." *Hei v. Holzer*, 73 P.3d 94, 99 (Idaho 2003) (emphasis added). The Court has already ruled that this aspect of *Hei* was not binding on the Court, as the § 1983 claim is a federal one, and that Torres's federal claim survived summary judgment due to the federal cases on point and analogous Ninth Circuit cases. Dkt. 71, at 39–43. The District acknowledges this ruling but argues that *Hei*'s holding "negates any general duty that is the basis of [Torres's] state claims sounding in negligence." Dkt. 93-1, at 15. Therefore, the District reasons, any evidence of coercion or manipulation is irrelevant.

The Court has already dealt with this argument as well, ruling that whether the District had a general duty of care depends on the foreseeability of a risk of harm, which

---

[10] Indeed, as discussed below, the impetus for the District's arguments is a holding in *Hei v. Holzer*, 73 P.3d 94, 99 (Idaho 2003)—a case and holding which the Court has already explicitly addressed.

is a question of fact for the jury. Dkt. 71, at 45–46. Moreover, *Hei* does not even come close to supporting the District's argument. There, an adult high school student and her teacher became sexually involved. Several times throughout their relationship different individuals informed the school district of their suspicions of the sexual activities. Ultimately, Hei sued the school district on numerous grounds. *Hei*, 73 P.3d at 97. While the Idaho Supreme Court affirmed the dismissal of Hei's § 1983 claim, it reversed the dismissal of her Title IX and negligent supervision claims. *Id.* at 100–01. On the issue of a duty of care, the court stated, "It is material that the School District may have known one of its teachers was having sexual relations with a student, yet failed to take action to supervise or protect the student. The School District owed some type of care to Hei." *Id.* at 101. The language and holdings in *Hei* cut against the District, and even in their absence, a comment on *a constitutional right* does not say anything about a common law tort.

In short, the conclusion of an argument is only as good as its premises. The District's conclusion is uncompelling because its premises are inaccurate and they misstate the law in Idaho and impact of *Hei* on the case at hand. Stated differently, the District's argument presents an unsound logical leap from no constitutional right to no duty of care. Therefore, the Court rejects the District's request to exclude the evidence.

   *8. Conclusion*

In conclusion, the evidence that is inadmissible against the District but admissible against Owen will come in with a limiting instruction. McCandless's testimony about the texts is not hearsay and not unduly prejudicial, but its foundation will be determined at trial. Testimony from Torres regarding Owen's statements that he altered Torres's

attendance records is not hearsay against Owen as a party opponent but is hearsay against the District. Testimony of Owen's conduct altering the attendance records, on the other hand, is not hearsay against either Owen or the District. Testimony regarding Owen's grooming and actions through the course of his relationship with Torres are not irrelevant or unduly prejudicial. Testimony about action or inaction on the part of the District leading to Torres's injuries is admissible. Testimony about Owen's failure to report the 2012 student sexual abuse incident may be relevant to the District's liability. The Court will rule on whether testimony of sexual abuse from particular witnesses is admissible when it arises at trial. Torres's testimony that she was coerced or manipulated to have sex with Owen is relevant as the District may have had a general negligence duty. Consequently, the District's third Motion in Limine is GRANTED in PART and DENIED in PART.

### D. Fourth Motion in Limine (Dkt. 97)

In its fourth and final Motion in Limine, the District requests the Court "to exclude damages and witnesses not properly disclosed in compliance" with Federal Rule of Civil Procedure 26(a)(1)(A)(iii). The District claims that Torres failed to properly identify her damage claims in her initial disclosures, failed to answer properly its interrogatories relating to her damage claims, and has taken no steps to supplement either. Dkt. 97-1, at 2. The District principally complains that Torres lumps her damage estimates together, making it impossible to differentiate between what Torres intends to prove are the damages it caused versus those that Owen caused. The District requests that the Court deny Torres "the opportunity to present any evidence on the issue of damages against" it. *Id.* at 10. Alternatively, the District requests a "sanction that only the evidence related to damages

that is contained in the Amended Complaint be used at trial." *Id.* at 8.

Torres responds with several arguments. First, much like her argument involved in the second Motion in Limine, Torres's threshold argument is that the District was under some sort of obligation or legal requirement to bring a motion to compel. Again, this misstates the applicable rules of procedure. *See infra* Section B.1. To reiterate, motions to compel are permissive, and no rule requires parties to file them prior to seeking Rule 37(c) sanctions. *See* Fed. R. Civ. P. 37(a)(1) ("[A] party *may* move for an order compelling disclosure or discovery." (emphasis added)); Fed. R. Civ. P. 37(c)(1). The duty to ensure proper disclosures and their supplementation is on the disclosing party, not the receiving one. Fed. R. Civ. P. 26(a); Dist. Idaho Loc. Civ. R. 26.2. Thus, this initial argument is unavailing.

Second, Torres argues that she in fact complied with her disclosure duties regarding damages. She initially asserts that a computation of damages is unnecessary for damages in categories such as emotional distress and punitive damages. She then highlights her estimated computations as to each category of damages in her initial disclosures; the produced documents supporting her damages, including counseling records and billing records; and her treating physicians, counselors, and a retained expert with a disclosed expert report for purposes of supporting her emotional distress damages. Dkt. 100, at 11. Lastly, Torres argues that any deficiency in her disclosures is justified, harmless, or both, given her disclosures, the nature of the damages to be proven in this case, and the District's lack of a motion to compel.

The District resists these contentions. It also specifically counters that Torres has not properly disclosed the computation and basis for specific damage figures any expert may suggest to the jury, which is required for it to properly defend itself, discussing various federal district court cases. Both parties are correct to some extent.

Routine discovery rules dictate parties' discovery efforts in civil litigation. Federal Rule of Civil Procedure 26(a)(1) requires parties to provide certain disclosures without awaiting a discovery request. The parties have an ongoing duty to supplement these disclosures as they learn of any incompleteness or incorrectness of them. Fed. R. Civ. P. 26(e). One area of required disclosure is "a computation of each category of damages claimed by the disclosing party" and "the documents or other evidentiary material . . . on which each computation is based." Fed. R. Civ. P. 26(a)(1)(A)(iii). In general, the computation required "contemplates some analysis beyond merely setting forth a lump sum amount for a claimed element of damages." *E.g.*, *Jones v. Wal-Mart Stores, Inc.*, 2:15-cv-1454-LDG-GWF, 2016 WL 1248707, at * (D. Nev. Mar. 28, 2016) (citing *City & Cty. of S.F. v. Tutor-Saliba Corp.*, 218 F.R.D. 219, 221 (N.D. Cal. 2003)). However, under some circumstances, emotional injuries and punitive damages need not be computed "because they are difficult to quantify and are typically considered a fact issue for the jury." *E.g.*, *E.E.O.C. v. Wal-Mart Stores, Inc.*, 276 F.R.D. 637, 639–40 (E.D. Wash. 2011) (collecting cases). However, if a plaintiff "intends to suggest a specific amount to the jury" for such damages, yet fails to supplement appropriately its Rule 26 disclosures with a computation of damages and the evidence and basis for it, a plaintiff "may be foreclosed from suggesting" a specific amount of damages to the jury at trial. *Id.* (collecting cases); *Lewis*

*v. City of Burnsville*, No. 19-1117 (ECT/BRT), 2020 WL 3496990, at *4 (D. Minn. June 29, 2020).

Here, the damages Torres alleges fall under the exception, thereby removing the duty to offer a specific computation. However, other than the amounts that are in the billing records provided, it appears that Torres has neglected to supplement her disclosures with any specific amounts that an expert may provide to compute a specific dollar figure for emotional damages. Additionally, it is undisputed that Torres has not updated her lump sum damages from her initial disclosures despite the Court's dismissal of some of her claims. *See generally* Dkt. 71. These shortcomings on Torres's part are not justified or harmless because the District has been unable, and will be unable, to prepare to depose or rebut Torres's experts or improperly disclosed amounts with their own discovery or experts. Moreover, the District propounded several interrogatories to this very end, which Torres inaccurately claimed she would supplement. Nevertheless, the District's lamentation that the disclosed damage estimates do not differentiate between Owen's liability and the District's is not availing because those damages are not easily quantified and are a fact issue for the jury to decide.

Therefore, the Court will allow Torres to offer the evidence of her damages in the disclosed medical and billing records and other general testimony and evidence that she was harmed by Owen's and the District's actions and omissions, but Torres will not be allowed either to elicit testimony as to specific general damage amounts or to suggest to the jury a specific amount of damages for her emotional and punitive damages. The District's fourth Motion in Limine is GRANTED in PART and DENIED in PART.

## III. ORDER

The Court HEREBY ORDERS:

1. The District's First Motion in Limine (Dkt. 68) is DENIED.

2. The District's Second Motion in Limine (Dkt. 84) is GRANTED in PART and DENIED in PART.

3. The District's Third Motion in Limine (Dkt. 93) is GRANTED in PART and DENIED in PART.

4. The District's Fourth Motion in Limine (Dkt. 97) is GRANTED in PART and DENIED in PART.

5. Torres's Motion to Seal (Dkt. 103) is GRANTED.

DATED: April 20, 2021

David C. Nye
Chief U.S. District Court Judge